## FELT & TARRANT MANUFACTURING CO. *v.* GALLAGHER ET AL.

No. 302. Argued December 13, 1938.—Decided January 30, 1939.

---

[1] 101 F. 2d 426.

*Mr. A. Calder Mackay,* with whom *Mr. Thomas R. Dempsey* was on the brief, for appellant.

*Mr. James J. Arditto,* Deputy Attorney General of California, with whom *Messrs. U. S. Webb,* Attorney General, *H. H. Linney,* Deputy Attorney General, and *Roger J. Traynor* were on the brief, for appellees.

By leave of Court, *Mr. Jesse H. Steinhart* filed a brief, as *amicus curiae,* in support of appellant.

Mr. Justice McReynolds delivered the opinion of the Court.

Appellant seeks an injunction prohibiting the state officers from enforcing against it the California Use Tax Act of 1935. (Cal. Stat. 1935, ch. 361, as amended by Cal. Stat. 1937, ch. 401, 671 and 683.) Counsel do not question the right of the state to collect this tax from the user, etc., but they say that, in the circumstances here disclosed, the officers may not compel appellant to serve as an agent for collecting the tax as they are threatening to do.

The trial court, three judges, dismissed the bill upon motion.

It appears—

Appellant, an Illinois corporation, is engaged in manufacturing and selling comptometers in that state and delivering these to purchasers in various parts of the Union. As stated by the court below its method of doing business with respect to California purchasers is substantially as follows:

"Pursuant to a separate contract made with each, the exclusive right to solicit orders in California is granted to two general agents, each of whom is allotted a separate section of the State. Under this contract the only compensation paid to a general agent consists of commissions on sales made. Each general agent may employ sub-agents and also a demonstrator for the purpose of demonstrating and instructing respecting the comptometers, provided such employment is approved by plaintiff. Likewise, plaintiff agrees by this contract to pay the rent of an office for each general agent, provided the lease to the same has been approved by it, such of-

fice to be used exclusively in furthering its business; also agrees to pay part of the traveling expenses incurred by each general agent, his sub-agents and demonstrators while traveling on business trips authorized by plaintiff, and also to reimburse each general agent to the extent of part of the monies advanced to a sub-agent and, in addition, in the amount of $40.00 per month toward the salary of a demonstrator. Plaintiff assumes no other financial obligation with respect to sub-agents and demonstrators. Under this contract the general agent must devote his entire time and attention to soliciting orders for plaintiff. All orders taken must be submitted to and approved by plaintiff, all sales and deliveries must be made by, and all bills for such orders as are accepted must be rendered by, the plaintiff. The general agent is prohibited from making collections and all payments must be made directly to plaintiff. The contract further requires the general agent to maintain certain records, and make certain reports and make a specified minimum number of calls on prospective customers."

And further "That each of these two general agents maintains an office in this State, the lease to such office designating the plaintiff as lessee therein, the rent for the same being paid by plaintiff, while all other expenses of maintaining such office are paid by the general agent. As soon as an order is accepted a particular machine is appropriated for that purpose in plaintiff's shipping department in Illinois. All machines sold for delivery in California are shipped from one of plaintiff's distributing points outside of the State. Sometimes machines are forwarded directly to the purchasers, while in other instances, in order to secure reduced freight charges, large groups of machines are shipped to the general agent who makes delivery to the respective purchasers. The only machines kept by plaintiff in California are those used as

demonstrators. Plaintiff has never qualified to do intrastate business in California."

The Use Tax Act (§ 6) directs retailers maintaining a place of business in the state, and making sales of tangible personal property for storage, use or other consumption therein, to collect from the purchaser the tax imposed.

Appellant presents for our consideration two points: (1) The statute as construed and applied by the appellees to the appellant is repugnant to Art. I, § 8, clause 3 of the Federal Constitution. (2) The threatened enforcement of the statute would deprive appellant of his property without Due Process of Law contrary to the Fourteenth Amendment.

The argument is this—

The appellant, an Illinois corporation, carried on no intrastate operations in California and is not subject to its jurisdiction. Such business as it transacts in California is interstate in character. California, therefore, lacks the power to require it (1) to act as the state's collecting agent with respect to use tax which may become due from California storers, users or consumers, or (2) to insure payment of such tax if it fails to make collections from the tax debtors, or (3) otherwise to act as a "retailer" as defined by the Act and the appellees. The treatment of the appellant as a retailer subject to the provisions of the California Use Tax Act is a direct burden upon interstate commerce prohibited by the Federal Constitution. Numerous provisions of the statute, if applied, would deprive appellant of its property without due process of law.

The trial court thought that both contentions were foreclosed by what was said and ruled in *Bowman* v. *Continental Oil Co.*, 256 U. S. 642, 650, *Monamotor Oil Co.* v. *Johnson*, 292 U. S. 86, 93, 95, and *Henneford* v. *Silas Mason Co.*, 300 U. S. 577, 582, 583. And we agree with that conclusion.

*Henneford* v. *Silas Mason Co.* upheld a Washington statute similar to the one under consideration. The opinion declared (pp. 582, 583)—

"The tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end.

"Things acquired or transported in interstate commerce may be subjected to a property tax, non-discriminatory in its operation, when they have become part of the common mass of property within the state of destination. . . . This is so, indeed, though they are still in the original packages. . . . For like reasons they may be subjected, when once they are at rest, to a non-discriminatory tax upon use or enjoyment. . . . A tax upon the privilege of use or storage when the chattel used or stored has ceased to be in transit is now an impost so common that its validity has been withdrawn from the arena of debate."

*Bowman* v. *Continental Oil Company* recognized the right of the state to require a distributor "to render detailed statements of all gasoline received, sold, or used by it, whether in interstate commerce or not, to the end that the State may the more readily enforce said excise tax to the extent that it has lawful power to enforce it as above stated."

*Monamotor Oil Co.* v. *Johnson* upheld an Iowa statute. The complainant there sought an injunction prohibiting tax officers from requiring the distributor of motor oil received from another state to pay into the state treasury the tax levied upon the consumer. This Court said (pp. 93, 95), "There is no substance in the claim that the statutes impose a burden upon interstate commerce . . . The statute in terms imposes the tax on motor vehicle fuel used or otherwise disposed of in the state. Instead of collecting the tax from the user through its own officers, the state makes the distributor its agent for that

68

purpose. This is a common and entirely lawful arrangement. . . . The statute obviously was not intended to reach transactions in interstate commerce, but to tax the use of motor fuel after it had come to rest in Iowa, and the requirement that the appellant as the shipper into Iowa shall, as agent of the state, report and pay the tax on the gasoline thus coming into the state for use by others on whom the tax falls imposes no unconstitutional burden either upon interstate commerce or upon the appellant."

The challenged judgment must be

*Affirmed.*

MR. JUSTICE ROBERTS took no part in the consideration or decision of this cause.