## GENERAL TRADING CO., DOING BUSINESS AS MINNEAPOLIS IRON STORE, *v.* STATE TAX COMMISSION OF THE STATE OF IOWA.

No. 441. Argued February 4, 1944.—Decided May 15, 1944.

*Mr. Edward S. Stringer,* with whom *Mr. A. B. Howland* was on the brief, for petitioner.

*Mr. Jens Grothe,* Special Assistant Attorney General of Iowa, with whom *Mr. John M. Rankin,* Attorney General, was on the brief, for respondent.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The State Tax Commission of Iowa brought this suit under the authority of the Iowa Use Tax Law which was recently here in *Nelson* v. *Sears, Roebuck & Co.,* 312 U. S. 359, and *Nelson* v. *Montgomery Ward & Co.,* 312 U. S. 373. The question now presented is, in short, whether Iowa may collect, in the circumstances of this case, such a use tax from General Trading Company, a Minnesota corporation, on the basis of property bought from Trading Company and sent by it from Minnesota to purchasers in Iowa for use and enjoyment there.

By the Iowa Use Tax Law a tax is "imposed on the use in this state of tangible personal property purchased . . . for use in this state at the rate of two percent of the purchase price of such property. Said tax is . . . imposed upon every person using such property within this state until such tax has been paid directly to the county treasurer, to a retailer, or to the commission. . . ." § 6943.103, Code of Iowa 1939. The use of property the sale of which is subject to Iowa's sales tax is exempted from the use tax (§ 6943.104 (1)), but the sales tax can be laid only on sales at retail within the State. § 6943.075. The use tax constitutes a debt owed by the retailer to the State. § 6943.112. But "Every retailer maintaining a place of business" in Iowa must collect this tax from the purchaser (§ 6943.109), and may not advertise that he will himself absorb the tax. § 6943.111. Finally an offsetting credit

(see *Henneford* v. *Silas Mason Co.*, 300 U. S. 577, 584, 586–7) if another use or sales tax has been paid for the same thing elsewhere is allowed, and if the tax "imposed in such other state is two percent or more, then no tax shall be due on such articles." § 6943.125.

A judgment in favor of the Tax Commission by one of the lower courts was affirmed by the Supreme Court of Iowa, 233 Iowa 877; 10 N. W. 2d 659. The application by that Court of its local laws and the facts on which it founded its judgment are of course controlling here. From these it appears that General Trading Company had never qualified to do business as a foreign corporation in Iowa nor does it maintain there any office, branch or warehouse. The property on which the use tax was laid was sent to Iowa as a result of orders solicited by traveling salesmen sent into Iowa from their Minnesota headquarters. The orders were always subject to acceptance in Minnesota whence the goods were shipped into Iowa by common carriers or the post. Upon these facts and its holding that Trading Company was a "retailer maintaining a place of business in this state" within the meaning of the Iowa statute, the Iowa Supreme Court held that Iowa had not exceeded its powers in the imposition of this use tax on Iowa purchasers, and that collection could validly be made through the Trading Company.

We brought the case here, 320 U. S. 731, to meet the claim that there was need for further precision regarding the scope of our previous rulings on the power of States to levy use taxes. In view, however, of the clear understanding by the court below that the facts we have summarized bring the transaction within the taxing power of Iowa, there is little need for elaboration. We agree with the Iowa Supreme Court that *Felt & Tarrant Co.* v. *Gallagher*, 306 U. S. 62; *Nelson* v. *Sears, Roebuck & Co.*, *supra*; and *Nelson* v. *Montgomery Ward & Co.*, *supra*, are

controlling. The *Gallagher* case is indistinguishable—
certainly nothing can turn on the more elaborate arrange-
ments for soliciting orders for an intricate machine for
shipment from without a State as in the *Gallagher* case,
compared with the apparently simpler needs for soliciting
business in this case. And the fact that in the *Sears Roe-
buck* and *Montgomery Ward* cases the interstate vendor
also had retail stores in Iowa, whose sales were appropri-
ately subjected to the sales tax, is constitutionally irrele-
vant to the right of Iowa sustained in those cases to exact
a use tax from purchasers on mail order goods forwarded
into Iowa from without the State. All these differentia-
tions are without constitutional significance. Of course,
no State can tax the privilege of doing interstate business.
See *Western Live Stock* v. *Bureau*, 303 U. S. 250. That
is within the protection of the Commerce Clause and sub-
ject to the power of Congress. On the other hand, the mere
fact that property is used for interstate commerce or
has come into an owner's possession as a result of inter-
state commerce does not diminish the protection which he
may draw from a State to the upkeep of which he may be
asked to bear his fair share. But a fair share precludes
legislation obviously hostile or practically discriminatory
toward interstate commerce. See *Best & Co.* v. *Maxwell*,
311 U. S. 454.

None of these infirmities affects the tax in this case any
more than it did in the other cases with which it forms a
group. The tax is what it professes to be—a non-discrim-
inatory excise laid on all personal property consumed in
Iowa. The property is enjoyed by an Iowa resident partly
because the opportunity is given by Iowa to enjoy prop-
erty no matter whence acquired. The exaction is made
against the ultimate consumer—the Iowa resident who is
paying taxes to sustain his own state government. To
make the distributor the tax collector for the State is a
familiar and sanctioned device. *Monamotor Oil Co.* v.

*Johnson,* 292 U. S. 86, 93–94; *Felt & Tarrant Co.* v. *Gallagher, supra.*

*Affirmed.*

Mr. Justice Rutledge concurs. For his opinion, see *post,* p. 349.

Mr. Justice Jackson, dissenting:

This decision authorizes in my opinion an unwarranted extension of the power of a state to subject persons to its taxing power who are not within its jurisdiction and have not in any manner submitted themselves to it. The General Trading Company is, in the language of the opinion, made "the tax collector for the State." We have heretofore held, and I think properly, that the state may make tax collectors of those who come in and do business within its jurisdiction, for thereby they submit themselves to its power. Such was the situation in both *Monamotor Oil Co.* v. *Johnson,* 292 U. S. 86, and *Felt & Tarrant Mfg. Co.* v. *Gallagher,* 306 U. S. 62. These are the only authorities cited by the Court on this point, and they clearly are not precedents to support this decision.

In this case, as the opinion points out, the General Trading Company never qualified in Iowa and has no office, branch, warehouse, or general agent in the State. From Minnesota it ships goods ordered from salesmen by purchasers in Iowa. Orders are accepted only in Minnesota. The transaction of sale is not taxed and, being clearly interstate commerce, is not taxable. *McLeod* v. *Dilworth Co., ante,* p. 327. So we are holding that a state has power to make a tax collector of one whom it has no power to tax. Certainly no state has a constitutional warrant for making a tax collector of one as the price of the privilege of doing interstate commerce. He does not get the right from the state, and the state cannot qualify it. I can imagine no principle of states' rights or state comity which can justify what is done here.

Nor does the practice seem conducive to good order in the federal system. The power of Iowa to enforce collection in other states is certainly very limited and the effort to do so on any wide scale is unlikely either to be systematically pursued or successfully executed.

I recognize the pressure to uphold all manner of efforts to collect tax moneys. But this decision, by which one may not ship goods from anywhere in the United States to a purchaser in Iowa without becoming a nonresident tax collector, exceeds everything so far done by this Court. In my opinion the statute is an effort to exert extraterritorial control beyond any which a state could exert if there were no Constitution at all. I can think of nothing in or out of the Constitution which warrants this effort to reach beyond the State's own border to make out-of-state merchants tax collectors because they engage in interstate commerce with the State's citizens.

MR. JUSTICE ROBERTS joins in this opinion.