[S. F. No. 17970. In Bank. Apr. 4, 1950.]

THE PEOPLE, Respondent, v. WEST PUBLISHING
COMPANY (a Corporation), Appellant.

John W. Preston for Appellant.

Fred N. Howser, Attorney General, and James E. Sabine, Deputy Attorney General, for Respondent.

SPENCE, J.—This action was commenced by the state to enforce the statutory liability of the West Publishing Company, a Minnesota corporation, for use taxes levied as the result of its sale of law books and legal periodicals to California customers during the period of July 1, 1935, to December 31, 1939, inclusive, pursuant to the California Use Tax Act of 1935, as amended. (Stats. 1935, ch. 361, p. 1297, as amended by Stats. 1937, chs. 401, 671, 683, pp. 1327, 1874, 1935, Stats. 1939, ch. 677, p. 2154; Deering's Gen. Laws, 1937, Act 8495a;

now Rev. & Tax. Code, div. 2, pt. 1.) After personal service of process had been made upon three of defendant's salesmen operating in this state, defendant appeared specially in this action and moved to quash the service of summons on the ground that it was a foreign corporation engaged exclusively in interstate commerce and was not doing business in this state so as to be amenable to its process. Defendant also contested the constitutionality of the Use Tax Act as applied to its local activities, claiming that its subjection to the requirements of the tax would constitute a regulation of and a direct burden upon interstate commerce and would deprive it of its property without due process of law. The motion to quash service of summons was denied, and this court thereafter denied defendant's application for a writ of prohibition to restrain the trial court from proceeding further in the action. (*West Publishing Co.* v. *Superior. Court*, 20 Cal.2d 720 [128 P.2d 777]; cert. den., 317 U.S. 700 [63 S.Ct. 524, 87 L.Ed. 559].) The trial of this action then followed and judgment was entered in favor of the state in the sum of $36,668.39, with interest and costs. From such judgment defendant has appealed.

Appellant apparently concedes that in view of the recent decision of the Supreme Court of the United States in *General Trading Co.* v. *State Tax Com.* (1944), 322 U.S. 335 [64 S.Ct. 1028, 88 L.Ed. 1309], it may constitutionally be required to collect the use tax on sales in this state attributable to the solicitation of its local salesmen. But in challenge of the amount of its use tax liability as here adjudicated, appellant urges these points: (1) the bar of the statute of limitations on a portion of the tax claim; (2) the unconstitutionality of the tax levy in relation to its mail order sales as a burden on interstate commerce and in violation of the due process clause of the Fourteenth Amendment of the federal Constitution; and (3) the nonallowance of certain counterclaims in diminution of the state's tax recovery.

In response to these contentions, respondent asserts: (1) the timeliness of the action as brought on the entire tax claim pursuant to the terms of the Use Tax Act; (2) the failure of appellant to avail itself of its administrative remedies as precluding its complaint here of alleged errors in the tax agency's computation of the tax assessment; but in any event (3) the integrated local activity of appellant negatives its constitutional objections to its tax liability on mail order business with California customers; and (4) counterclaims have no place in an action to enforce the payment of taxes, unless expressly

so authorized by statute. Consideration of the legal principles applicable to the disposition of the matters in controversy leads to the conclusion that the judgment should be affirmed.

This appeal is presented upon an agreed statement. The nature of appellant's activities in this state has been discussed at some length in prior opinions of this court—*West Publishing Co.* v. *Superior Court, supra,* 20 Cal.2d 720, cert. den., 317 U.S. 700 [63 S.Ct. 524, 87 L.Ed. 559], holding appellant "present in this state" for the purpose of the service of process, and *West Publishing Co.* v. *McColgan,* 27 Cal.2d 705 [166 P.2d 861], aff., 328 U.S. 823 [66 S.Ct. 1378, 90 L.Ed. 1603], holding appellant subject to the state Corporation Income Tax Act (Stats. 1937, ch. 765, p. 2184, as amended, Stats. 1939, ch. 1049, p. 2902; 3 Deering's Gen. Laws, Act 8494a)—and it will only be necessary now to recite such facts as may be required for the determination of the specific issues here in controversy.

Appellant is a Minnesota corporation, with its principal place of business in St. Paul, Minnesota. It is engaged in the business of publishing and selling law books and legal periodicals throughout the United States. It has not qualified to do intrastate business in California. However, during the period here involved it maintained "places of business" in this state— space occupied in certain law offices located in Sacramento, San Francisco, and Los Angeles in return for the use of its books stored in such offices—and it had four regularly employed solicitors operating therefrom and devoting their entire time to appellant's business. It advertised in local legal periodicals and newspapers its places of business where its local representatives could be contacted. Appellant's employees in this state were authorized to and did solicit orders; accept down payments in connection with the orders taken, usually involving an installment arrangement; obtain and forward to appellant credit information concerning appellant's present and prospective customers; collect delinquent accounts upon the request of appellant's credit department; undertake adjustments in case of complaints by customers as to the condition of the books upon arrival, delivery service, or other matters; assist prospective purchasers in the disposal of second-hand books; and keep appellant advised concerning the current status of attorneys in this state. The books were sold by appellant under title-retaining contracts, appellant retaining title until full payment was made therefor. Orders obtained by appellant's local salesmen were required to be sent to the home

office for approval or rejection, and in the latter event instructions were given to the salesmen either to rewrite the contract or refuse it altogether. In addition to the orders obtained through the solicitation of its local salesmen, appellant also did a certain amount of business in response to mail orders forwarded directly to appellant's home office by persons resident in this state. With respect to the source of appellant's business in this state, the trial court found that "approximately 60% in amount of the orders received by [appellant] from California customers . . . resulted from solicitation by [its] employees" in this state ("approximately 35% . . . from current solicitation . . . and approximately 25% . . . from prior solicitation") and "approximately 40% . . . were mail orders" sent directly to appellant's home office. Appellant filled all orders by direct shipment from its Minnesota publishing plant, via common carrier and with transportation charges prepaid to its customers in this state. Appellant also shipped books, without prior order, to California customers owning prior editions of the particular publication, and in the event of objection to such method of sales promotion, the matter would be referred to a local salesman for adjustment and disposition.

Appellant failed to file a return for use taxes for the period here involved, and the State Board of Equalization, under authority of section 10 of the Use Tax Act and upon such information as it had in its possession, made an estimate of $900,000 as the total amount of appellant's sales of "tangible personal property" for "storage, use or other consumption in this state" (or $50,000 for each quarterly period). Written notice of the estimate and computed tax liability was mailed to appellant on February 28, 1940; it made no application for a redetermination as authorized by section 12 of the act; and the amount so determined by the board to be due from appellant became final. The trial court made findings in accord with the board's computation of appellant's total tax liability upon the filing of suit—$36,922.50, consisting of $27,000 for use taxes, interest amounting to $4,522.50 as accrued to September 15, 1940 (§ 8), and penalties in the sum of $5,400 (§§ 10, 12)—but allowed a "credit for payments of tax, interest and penalties subsequently made by [appellant's] customers directly to the [board]" on books purchased during the period involved. Accordingly, judgment was entered in favor of the state in "the sum of $36,668.39, together with interest on the sum of . . . $26,809.32 (the amount of delinquent use taxes as

reduced from $27,000 by reason of the credit) at the rate of ... ½% ... per month, or fraction thereof, from September 15, 1940, to date of judgment, together with interest on the whole of said judgment at the rate of ... 7% ... per annum from the date of judgment until paid,'' plus costs.

 In objection to such adjudication of its total tax liability, appellant first argues that a portion of the state's tax claim is barred by the statute of limitations. By the terms of the act, the use tax is payable quarterly, ''on or before the fifteenth day of the month next succeeding each quarterly period'' (§ 7), and an action may be brought by the board ''[a]t any time within three years after any amount ... required to be collected has become *due and payable* and any time within three years after the delinquency of any tax'' (§ 24; emphasis added). This action was commenced on October 15, 1940. Appellant maintains that the statutory period of limitations began to run on its ''liability for any quarterly period involved in this action, on the 16th day of the month following such period,'' and accordingly the recovery of the use tax on sales made prior to October 15, 1937, is barred by the applicable section of the act itself above quoted, as well as by section 338, subdivision 1, of the Code of Civil Procedure, prescribing a like three-year period of limitation for the commencement of an action ''upon a liability created by statute.''

But appellant's argument gives no effect to other pertinent provisions of the Use Tax Act. As heretofore noted, this action was commenced to collect an amount determined by the board to be due from appellant under authority of section 10, upon the ''failure'' of a ''person'' subject to the terms of the act ''to make a return'' for the period in question. Section 12 provides that ''[a]ll amounts determined to be due by the board under the provisions of section 9 or 10 ... shall become *due and payable at the time they become final''* (emphasis added), and that they become ''final'' 30 days after the service of the board's notice of determination if, as here, no petition for redetermination has been filed within such period. The board made its determination of appellant's use tax delinquency for the period involved on February 28, 1940; ''thirty days'' thereafter the assessment became ''final''; and any action to collect the amount which had then become ''due and payable'' pursuant to the board's determination could be brought within three years under the express provisions of

section 24 above quoted. The present action was commenced within the year and therefore well within the authorized period.

This conclusion as to the timeliness of respondent's action finds support in the decisions reached in the cases of *People* v. *Hochwender,* 20 Cal.2d 181 [124 P.2d 823], and *People* v. *Nymer,* 71 Cal.App.2d 550 [163 P.2d 92], where similar provisions in the Retail Sales Tax Act, which is complementary to the Use Tax Act, were considered, and in each instance it was held that the date at which the tax board's assessment became final started the running of the three-year period of limitation. Appellant's contention that the time for bringing suit commenced to run on the 16th day following the close of each quarterly period for which liability was asserted completely ignores the provisions of the act authorizing the making of determinations by the board (§§ 9 and 10) and prescribing the addition of "a penalty of ten per cent of the amount" of the taxes upon failure to pay on the due date— that is, when the assessment becomes "final," or "thirty days" after the service of the notice of assessment in the absence of the filing of "a petition for redetermination" within that time (§ 12). The precise line of argument here advanced by appellant was expressly rejected in the Hochwender case under similar statutory provisions effecting the fixing of the delinquency date, at which time the three-year period of limitation began to run (20 Cal.2d 185). While the Legislature has provided a three-year period for the board's audit of a return filed under the Use Tax Act and the determination of whether an additional assessment should be made (§ 15), it has specifically excluded such time limitation where there has been a "neglect or refusal to make a return," indicating that in such circumstances the delinquent date stems from the board's assessment when made "upon [such] information [as it has] in its possession" and coincident with the attachment of the prescribed penalty. If the retailer then accedes to the board's determination of the use taxes due and pays the amount so computed within "thirty days" after service of the notice of assessment, the penalty for noncompliance is obviated. In such manner, the statutory procedure for the effective functioning of the use tax collection from persons properly subject to the act is followed pursuant to the Legislature's plan in the event of either contingency affecting the commencement of the three-year period of limitations—the *filing of a return* with the aforesaid limit for review by the board, and the *failure to file a*

*return* with the delinquent date awaiting the board's action as authorized. (*People* v. *Nymer, supra,* 71 Cal.App.2d 550, 552-553.) While the board could have made its determination of appellant's use tax liability for each quarterly period on the 16th day following the close thereof, it was not so required by the terms of the act. It proceeded precisely as authorized by the act in making its determination for the period in question on February 28, 1940, on which day notice thereof was mailed to appellant, and "thirty days" thereafter the assessment became "final," so that within the following three years an action for the collection of the entire amount of the delinquent taxes, plus the penalty and interest accruals, could be brought. Accordingly, the timeliness of the present action, commenced on October 15, 1940, is clear. ■ Appellant's citation of the general statute of limitations (Code Civ. Proc., § 338, subd. 1) and its application in tax cases can be of no assistance here, for the Use Tax Act contains its own specific provisions in that regard, and they are controlling. (*People* v. *Hochwender, supra,* 20 Cal.2d 181, 184-185; *People* v. *Nymer, supra,* 71 Cal.App.2d 550, 553.)

■ Appellant next challenges the propriety of the judgment by reason of the (1) alleged erroneous inclusion of its mail order sales within the use tax computation and (2) failure to allow certain counterclaims in fixing its total liability. In opposition to the consideration of these objections, respondent properly cites the rule of the exhaustion of administrative remedies as here applicable. Thus, appellant, though subject to the provisions of the Use Tax Act and accordingly required to file returns, nevertheless failed to so comply with the statute; it thereby became necessary for the board to determine appellant's use tax liability on an estimated basis and so notify appellant (§ 10); and appellant made no "petition for a redetermination" but permitted the amount so determined by the board to become final (§ 12). Yet now appellant seeks a reduction in the amount of its use tax assessment for reasons which it neglected and refused to present to the administrative agency expressly empowered to determine and dispose of disputed issues of liability in the granting of appropriate relief. Here appellant not only has failed to exhaust its administrative remedies, but it has neglected to make any use of the orderly procedure provided for securing a correct tax assessment before judicial redress is sought. Analogous considerations were before this court in *West Publishing Co.* v. *McCol-*

*gan, supra,* 27 Cal.2d 705, where appellant as plaintiff, seeking a refund of the corporation income tax collected from it for certain taxable years, had failed to file returns under the governing act for the period involved and to furnish information therefor to the commissioner, who was thereupon required to make an estimated assessment pursuant to the terms of the statute. In such situation, it was pertinently said at page 712: "Plaintiff cannot complain of alleged errors in the computation of tax liability, when it refused to avail itself of its administrative remedies to prevent or correct such errors. (Citing numerous authorities, including the leading case of *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715].)"

 Appellant argues that since its objections to the use tax assessment only involve questions of law as distinguished from pure issues of fact, it was not required to present its contentions first to the board before asserting them in this litigation. But in the effective performance of its designated functions under the terms of the Use Tax Act, the board necessarily must pass upon matters of both law and fact, and though the "[a]dministrative determination of questions of law is subject to judicial review upon which the courts may substitute their own judgment for the administrative determination" (42 Am.Jur. § 210, p. 622; note 4, citing numerous cases), the board nevertheless should be afforded the opportunity to rectify any determination it has made and consider a revision of its tax assessment. (*Alexander* v. *State Personnel Board,* 22 Cal.2d 198, 200 [137 P.2d 433]). This principle of initial resort to prescribed administrative processes has received particular emphasis in tax enforcement cases. (Stason, *Judicial Review of Tax Errors—Effect of Failure to Resort to Administrative Remedies,* 28 Mich.L.Rev. 637; note, 44 Mich. L.Rev. 1035.) So illustrative is the case of *Gorham Manufacturing Co.* v. *State Tax. Com.,* 266 U.S. 265 [45 S.Ct. 80, 69 L.Ed. 279], where the Supreme Court of the United States refused to consider constitutional objections urged with regard to a franchise tax because the complaining taxpayer had failed to apply to the State Tax Commission for "revision and correction of the tax . . . 'according to law and the facts' . . . [and so] avail itself of the administrative remedy provided by the statute." (Pp. 269-270.)

 But aside from this procedural qualification affecting appellant's initial presentation of its argument here, its first contention may not be sustained on the merits. Appellant

makes the constitutional objection that its required collection of the use tax on mail order sales would impose a burden upon interstate commerce and violate the due process clause of the Fourteenth Amendment. In discussing this issue, there should be noted at the outset the two prior opinions of this court wherein appellant's method of doing business in this state was fully reviewed in relation to asserted tax obligations: *West Publishing Co.* v. *Superior Court, supra,* 20 Cal.2d 720, holding that the nature and range of appellant's local activities established it as "a retailer maintaining a place of business in this state" (§ 6) and that such "presence" in this jurisdiction rendered it liable to the service of process under the terms of the Use Tax Act in this precise action; and *West Publishing Co.* v. *McColgan, supra,* 27 Cal.2d 705, declaring that appellant received from the state such benefits in the conduct of its business transactions as would justify the state's exaction of a price therefor—payment of the corporation income tax. The California Use Tax Act makes no exception with regard to the imposition of the tax on mail order sales, and the principles of decision governing pertinent cases adjudicated by the Supreme Court of the United States sustain the act's application to such controverted portion of appellant's business with customers within this state.

There is no violation of the commerce clause involved in the requirement that an out-of-state seller of goods collect a use tax on goods sold for use within the state (*Nelson* v. *Sears, Roebuck & Co.* (1941), 312 U.S. 359 [61 S.Ct. 586, 85 L.Ed. 888, 132 A.L.R. 475]; *Nelson* v. *Montgomery Ward Co.* (1941), 312 U.S. 373 [61 S.Ct. 593, 85 L.Ed. 897]), even when the seller is engaged exclusively in interstate commerce. (*Felt & Tarrant Mfg Co.* v. *Gallagher* (1939), 306 U.S. 62 [59 S.Ct. 376, 83 L.Ed. 488]; *General Trading Co.* v. *State Tax Com.* (1944), *supra,* 322 U.S. 335.) In the Sears, Roebuck and Montgomery Ward Company cases, the contested application of the Iowa Use Tax Act, practically identical in language with the California Use Tax Act, focused directly on mail order sales, with the company in each instance maintaining that such portion of its business was without the orbit of the state's taxing power in that it arose from orders sent by Iowa purchasers to the company's out-of-state branches and filled by direct shipments through the mails or common carrier from those branches to the purchasers. In upholding the validity of the Iowa use tax in its application to the mail

order sales, the court noted that such business could not be divorced from the integrated local activities of the company in Iowa flowing from its maintenance of retail stores there and its permit to do business within the state; and accordingly Iowa was empowered to impose upon the company the burden of the use tax collection as the price of enjoying the full benefits flowing from its Iowa business—intrastate as well as interstate. (See Altman and Keesling, Allocation of Income in State Taxation [1946], p. 30.)

Appellant argues that the rationale of these two cases would not apply here because there, contrary to the present situation, the company had qualified to do business within the state and so submitted to its jurisdiction. But such distinction was expressly rejected as a controlling factor in the later case of *General Trading Co.* v. *State Tax Com., supra,* 322 U.S. 335, where the effective operation of the Iowa use tax was considered in relation to goods shipped directly to Iowa customers from the company's out-of-state headquarters as the result of orders solicited by the company's traveling salesmen sent into the state for that purpose but not permanently located there. The company had never qualified to do business as a foreign corporation in Iowa nor did it have any office, branch or warehouse there, but its local activities were deemed sufficient to establish it as ''a retailer maintaining a place of business in [the] state'' within the meaning of the Iowa statute and thus bring the transactions in question within the taxing power of the state. (See Altman and Keesling, Allocation of Income in State Taxation [1946], *supra,* p. 39.) So it is pertinently said at page 338: ''. . . the fact that in the *Sears, Roebuck* and *Montgomery Ward* cases the interstate vendor also had retail stores in Iowa, whose sales were appropriately subjected to the sales tax, is constitutionally irrelevant to the right of Iowa sustained in those cases to exact a use tax from purchasers on mail order goods forwarded into Iowa from without the State. All these differentiations are without constitutional significance. . . . The tax is what it professes to be—a non-discriminatory excise laid on all personal property consumed in Iowa. The property is enjoyed by an Iowa resident partly because the opportunity is given by Iowa to enjoy property no matter whence acquired. The exaction is made against the ultimate consumer—the Iowa resident who is paying taxes to sustain his own state government. To make the distributor the tax collector for the State is a familiar and sanctioned device. *Monamotor Oil Co.* v.

*Johnson,* 292 U.S. 86, 93-94 [54 S.Ct. 575, 78 L.Ed. 1141]; *Felt & Tarrant Co.* v. *Gallagher, supra.''*

■ Likewise foreign corporations, not licensed to do business in the state, have been held amenable to the requirement of use tax collection despite their contention that such subjection would amount to a denial of due process. (*Felt & Tarrant Mfg. Co.* v. *Gallagher, supra,* 306 U.S. 62; *General Trading Co.* v. *State Tax Com., supra,* 322 U.S. 335.) Such decisions rest on considerations indicating the extent of the local activities in which the company engages and the protection which it receives from the state with regard thereto as justification for the tax. ■ So appropriate is a brief recapitulation of the significant factors disclosed by the record here: Although not qualified to do intrastate business here, appellant maintained ''places of business'' in this state which it advertised in local publications as its local offices where its local representatives could be contacted. Its salesmen were in this state on a permanent basis, employed at a full-time salary, assigned specific territory for the solicitation of customers, and available at appellant's places of business. Without distinction between mail or solicited orders, appellant's salesmen performed such services for appellant as obtaining and forwarding credit information concerning appellant's customers and prospective purchasers, arranging for the payment of and collection upon delinquent accounts when so requested by appellant's credit department, adjusting complaints with dissatisfied customers, and advising appellant concerning the current status of attorneys in this state, their ownership of law books and their prospective interests in appellant's various publications as a basis for appellant's determination of the circularization of its advertising matter to members of the legal profession. The state provided a market in which appellant operated in competition with local law book publishers, and its salesmen received the same protection and other benefits from the state as salesmen carrying on business activities for a company engaged in intrastate business. Appellant's books were sold under title-retaining contracts, and pending the payment of the full purchase price, appellant's property interest was protected by the state as likewise was its property interest in books which it shipped into the state without prior order and which then awaited appropriate disposition. Thus, the state protected appellant's business transactions within its borders and maintained courts in which it might enforce pay-

ment for the sale of its publications. Such factual summarization clearly demonstrates that appellant in maintaining its "places of business" in California has enjoyed such protection, opportunities, advantages, and benefits from the state as to bring it within the constitutional application of the Use Tax Act on *all* its sales with reference to an integrated course of business activity, whether the result of direct solicitation of its salesmen operating here or through mail orders as part of its overall California business. (*Nelson* v. *Sears, Roebuck & Co., supra,* 312 U.S. 359; *Nelson* v. *Montgomery Ward Co., supra,* 312 U.S. 373; *General Trading Co.* v. *State Tax Com., supra,* 322 U.S. 335.)

█ Nor does it avail appellant here to urge as its second contention in dispute of its adjudicated tax liability, that the trial court erred in "disallowing [its] counterclaims for $920.65 and $1,052.50, respectively." While the foregoing discussion concerning appellant's failure to exhaust its administrative remedies adequately disposes of this point of objection, a further observation relating to these alleged counterclaims should be made. Appellant seeks to offset against the assessment, which was based upon estimated sales of $900,000 for the tax period in question, the amount which it claims to be attributable to sales to state agencies for both that tax period and a later tax period, without making any showing at any stage of the proceedings that the amount of its actual sales, less the claimed sales to such agencies, was not far in excess of the estimate of $900,000. Under these circumstances, it appears peculiarly appropriate here to apply the rule requiring the taxpayer to exhaust administrative remedies before asking for judicial relief, and it becomes unnecessary to discuss the question of whether a counterclaim may ever be interposed in an action brought by the state for the purpose of enforcing a tax liability.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Dooling, J. pro tem., concurred.