Taet, J.
Appellant’s first contention is that, wherever a tax was assessed in the instant case on account of the purchase or use of property by appellant as a “consumer” (see Sections 5739.01 and 5741.01, Revised Code), appellant’s “purpose” was “to use * * * the thing transferred * * * directly in the rendi *397 tion of a public-utility service”; and that, therefore, no sales or use tax should have been assessed against appellant.*
All the items of property involved were used by appellant in doing work for the Pennsylvania Eailroad on three projects. These projects are described in appellant’s brief as follows:
“The Fernwood job involved the elimination of certain tunnels which were too small to accommodate the present size box cars, these tunnels being eliminated by what is known as an ‘open cut’ method adjacent to the old tunnel. In connection with the elimination of the tunnel, the roadway was straightened out, eliminating speed restrictions on the line, and the whole project involved the removal of approximately one million cubic yards of earth, the laying of track and closing off the old line. The Mingo Junction job was a construction of a ‘Y,’ the Y being new tracks, including a large fill and bridge construction work. The Powhatan job was the building of a complete new spur to a proposed coal mine, a distance of seven to nine miles away from existing tracks.”
From the foregoing, it is apparent that the work involved was not, as it was in Athens Home Telephone Co. v. Peck, Tax Commr., 158 Ohio St., 557, 110 N. E. (2d), 571, principally (see Mead Corp. v. Glander, Tax Commr., 153 Ohio St., 539, 93 N. E. [2d], 19, paragraph two of the syllabus) that of maintaining and repairing portions of property being used in rendering a public utility service, but rather it was work in constructing *398 portions of property to be used later on in rendering such a service.
As in other cases, the decision as to when property is used directly in a particular activity may depend upon a determination as to when that activity commences or terminates; and that determination may appear in a particular instance to represent the drawing of an artificial boundary or line. However, such boundaries and lines must be established and, if established and adhered to, they should be helpful as a guide to those charged with the administration of the tax laws and to those who must advise clients about them. See Powhatan Mining Co. v. Peck, Tax Commr., 160 Ohio St., 389, 116 N. E. (2d), 426; General Motors Corp. v. Bowers, Tax Commr., 164 Ohio St., 574, 132 N. E. (2d), 213.
In our opinion, a particular public utility project cannot be considered as rendering any public utility service until it is in substantial operation. It follows that property used or consumed principally in constructing such a project before it is in substantial operation cannot be considered, merely because of such use or consumption, as used or consumed directly in rendering a public utility service within the meaning of those words as used in Sections 5739.01 and 5741.01, Revised Code.
By not passing upon it, we do not mean to express any opinion as to appellant’s contention that a public utility service may be rendered by other than a public utility. See Van Meter v. Public Utilities Commission, 165 Ohio St., 391, 135 N. E. (2d), 848, and Midwest Haulers, Inc., v. Glander, Tax Commr., 150 Ohio St., 402, 83 N. E. (2d), 53. Cf. Apex Powder Corp. v. Peck, Tax Commr., 162 Ohio St., 189, 122 N. E. (2d), 693, which involved “production of * * * property * * * by * * * mining” rather than “rendition of a public-utility service.” In view of our conclusion with respect to when a public utility project may be considered as rendering a public utility service, it is obviously unnecessary to consider that contention in order to decide this case.
Appellant next contends that it was at all times acting as an agent for the Pennsylvania Railroad Company in the purchase or rental of equipment, materials, and supplies. Ap *399 parently this contention was made because appellant believes that tbe purchase or use of such property by the railroad in the construction by the railroad of these projects would not have been subject to sales or use taxes. In view of our conclusion with respect to appellant’s first contention and since it is conceded that no assessment was made on account of the purchase or use of rails, ties and other personal property which were incorporated into and became a part of the completed public utility projects here involved (cf. Erie Rd. Co. v. Peck, Tax Commr., 160 Ohio St., 322, 116 N. E. [2d], 304), this contention does not appear to have any force.
However, appellant also suggests that, if it acted only as agent for the railroad in making purchases for and using property on these three projects, then the sales and use taxes should have been levied against the railroad and not against appellant.
From our examination of the record, we do not believe that the Board of Tax Appeals was unreasonable in determining that appellant was not acting only as agent when it purchased or used the property with respect to which sales and use taxes were levied in the instant case.
With respect to a very substantial portion of the taxes levied in the instant case, it is contended that there were no transactions which can justify their levy.
Appellant and the M & S Construction Company, Inc. (herein referred to as M & S), which were both Pennsylvania corporations, had entered into a joint venture agreement with respect to the work to be done for the Pennsylvania Railroad on each of the three projects hereinbefore referred to. The evidence discloses that each company owned a substantial portion of the equipment which was to be used on those projects. These two companies organized and incorporated another Pennsylvania corporation, the Monroe Equipment Corporation which is herein referred to as Monroe, to hold legal title to their equipment and to facilitate accounting for and the repair of that equipment. Appellant and M & S each transferred equipment to and subscribed for 50 per cent of the stock of Monroe. Monroe then leased back that equipment to appellant and M & S for use on the foregoing three Pennsylvania Railroad pro *400 jects. A major portion of the use taxes complained of ty appellant on this appeal represents taxes computed on th< rentals paid to Monroe for that equipment.
By Section 5741.02, Revised Code, “an excise tax is * # levied on the * * * use # * * in this state of tangible persona property purchased for * * * use * * * in this state,” where the sale of such property is not subject to the sales tax provided foi in Section 5739.01 et seq., Revised Code.
It is not claimed that the transaction, whereby appellant and M & S acquired from Monroe the right to use this equipment, was subject to such a sales tax. Admittedly, the equipment involved was tangible personal property and was used by appellant and M & S in this state. Although the agreement between appellant and M & S on the one side and Monroe on the other contemplated use of this equipment in Ohio, it is argued that, by reason of that transaction, nothing was “purchased for * * * use ’ ’ in Ohio within the meaning of the use-tax statutes. That it was so “purchased” would seem clearly apparent from a mere reading of the definition of “purchase” in Section 5741.01, Revised Code, as meaning “ acquired for a consideration, whether such acquisition was effected by a transfer of title, or of possession, or of both, or a license to use * # *; whether such transfer was absolute or conditional, and by whatever means the same was effected; and whether the consideration was a price, rental in money, or exchange.”
After appellant and M & S transferred title to their equipment to Monroe, that title was vested in Monroe. Thereafter, when Monroe leased back the right to use that equipment, appellant and M & S certainly reacquired it by a “transfer of” at least “a license to use” and for a “rental in money ”
It is further argued that no jurisdictional basis existed for Ohio’s authority to levy a use tax against appellant on account of rentals paid to Monroe for this equipment because all the parties to the rental agreement were nonresidents, the rental agreements were executed outside Ohio, no transfer of possession or of the right to use the equipment took place in Ohio, and the contracts with respect to the work to be done with the equipment were executed outside Ohio with a nonresident of Ohio. The fact remains that there was a “purchase” as defined by the *401 Ohio use-tax statutes, and that purchase was for use in Ohio, and the property was used in Ohio. Although there may have been some question at one time as to the power of Ohio to tax such a use, there is no longer any question as to such a power, especially where such use tax corresponds with and is correlated with a tax on sales within the state. Henneford v. Silas Mason Co., Inc., 300 U. S., 577, 81 L. Ed., 814, 57 S. Ct., 524; Felt & Tarrant Mfg. Co. v. Gallagher, 306 U. S., 62, 83 L. Ed., 488, 59 S. Ct., 376; Wisconsin v. J. C. Penney Co., 311 U. S., 435, 85 L. Ed., 267, 61 S. Ct., 246; Nelson, Chairman, v. Sears, Roebuck & Company, 312 U. S., 359, 85 L. Ed., 888, 61 S. Ct., 586, 132 A. L. R., 475; Nelson, Chairman, v. Montgomery Ward & Company, Inc., 312 U. S., 373, 85 L. Ed., 897, 61 S. Ct., 593; annotation, 41 A. L. R. (2d), 535.

Decision affirmed.

Weygandt, C. J., Zimmerman, Stewart, Bell, Matthias and HebbeRT, JJ., concur.

By Section 5739.02, Revised Code, a tax is “levied on each retail sale made in this state of tangible personal property.” However, in defining “retail sale,” those sales are excepted where “the purpose of the consumer is * * * to use or consume the thing transferred * * * directly in the rendition of a public-utility service.” Section 5739.01, Revised Code.
By Section 5741.02, Revised Code, a tax is “levied on the * * * use * * * in this state of tangible personal property purchased for * * * use * * * in this state” and not “subject to the * * * tax” on retail sales provided for in Section 5739.02, Revised Code. (The tax is figured upon the “price for which such property has been purchased” just as the sales tax is figured upon the purchase price. The rate applied against the price involved is the same with respect to the use tax as it is with respect to the sales tax.) However, in Section 5741.01, Revised Code, it is provided that “when the purpose of the consumer is * * * to use or consume the thing transferred * * * directly in the rendition of a public-utility service * * * the attainment of such a purpose shall not be considered to be a * * * use * * * of the thing purchased.”