## TOPPS GARMENT MANUFACTURING CORPORATION *v.* STATE

[No. 65, October Term, 1956.]

*Decided January 14, 1957.*

The cause was argued before COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ., and MACGILL, J., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*Frederick P. McBriety,* with whom were *McBriety, Mace & Matthews* on the brief, for the appellant.

*Frank T. Gray, Assistant Attorney General,* and *Edward F. Engelbert, Counsel, Retail Sales Tax Division,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

At issue in this appeal is the right of Maryland to compel an unqualified foreign corporation to collect the use tax on goods shipped by it direct to resident purchasers on orders solicited within but accepted without the State. The lower court held that the State had this right and Topps Garment Corp., the out of state vendor, appeals.

The following provisions of the Code, 1951, Art. 81, are relevant (amendments to Sec. 368 (b) and Sec. 369 made in

1955 are not here pertinent) : Sec. 369 imposes the tax "* * * on the use, storage or consumption in this State of tangible personal property * * *"; Sec. 371 requires every vendor "engaging in business in this State" who sells tangible personal property for use, storage or consumption in this State to collect the tax; Sec. 368 (b) defines a vendor as one "* * * engaging in the business of making sales in this State or elsewhere * * *" for use, storage or consumption here; Sec. 368 (k) says that the phrase " 'Engaged in business in this State' means the selling or delivering in this State, or any activity in this State in connection with the selling or delivering in this State, of tangible personal property for use, storage or consumption within this State. This term shall include * * * (2) The having of any representative, agent, salesman, canvasser, or solicitor operating in this State for the purpose of selling, delivering, or the taking of orders for any tangible personal property."

The stipulations of the parties show the following facts. Topps, an Indiana corporation, manufactures uniforms that it sells in various parts of the United States. It neither owns nor rents any office, showroom, distribution center or warehouse in Maryland. It sells its products to Maryland purchasers by means of solicitors, some of whom are Maryland residents. These solicitors have been furnished with catalogs and order blanks. They are not on Topps' payroll, are not under supervision and do not account for their time or on whom they call with their catalogs. When a solicitor takes an order for goods shown in the catalog, he receives a percentage of the price as a deposit, which he retains as his commission. The order is mailed by the solicitor to Topps, which has the right to accept or reject it. When it is accepted, the goods are mailed by Topps direct to the purchaser, usually C. O. D., but in some cases on credit on open account. Solicitors come and go.

In 1954 the Comptroller of Maryland wrote several times to Topps, requesting an audit of all Maryland sales during the previous six years—the statutory period of limitations is six years—so that he would have a basis for a use tax assessment. Receiving no reply, the Comptroller wrote that an estimated

assessment would be made if no audit were furnished. This communication went unnoticed. The Comptroller thereupon made an assessment of $2,000 tax, $365 interest, and $700 penalty and sent it to Topps. Topps did not invoke or seek to invoke any of the administrative remedies provided by the statute. Thereupon a lien was filed in the Circuit Court for Dorchester County under Code, 1951, Art. 81, Sec. 388 (b), which states: "The lien provided for in this section shall have the full force and effect of a lien of judgment." An attachment was issued on the judgment and laid in the hands of Phillips Hardware Company of Cambridge, as garnishee. Phillips confessed owing Topps some $400, and a judgment of condemnation in favor of the State of Maryland was entered. The appellant moved to strike the judgment against it and the judgment of condemnation.

Appellant did not below, and does not here, deny that the Maryland statute in terms imposes liability on it to collect the use tax. It concedes that the judgment against it and the judgment of condemnation must stand if the Maryland statutes are constitutional, and attacks the judgments on the ground that the statute, as applied to it in the light of the slight connection it has with Maryland, affronts both the commerce clause of the Federal Constitution and the due process clause of the Fourteenth Amendment.

In *General Trading Co. v. State Tax Commission,* 322 U. S. 335, 88 L. Ed. 1309, the Supreme Court held that Iowa, under her use tax law, which imposed upon " 'Every retailer maintaining a place of business' " in the State the duty to collect the tax from the purchaser, could constitutionally compel an out-of-state corporate vendor to collect the tax. In that case, a Minnesota corporation which had never qualified as a foreign corporation in Iowa and which did not maintain there any office, branch or warehouse, sent salesmen into the State to solicit orders that were always subject to acceptance or rejection in Minnesota whence the goods were shipped by common carrier or the post to the Iowa buyers. The Court noted that no State could tax the privilege of doing interstate business, but that a nondiscriminatory excise tax on all personal property consumed within the State, laid against

the ultimate consumer—the Iowa resident—was valid, as had previously been held, and that "To make the distributor the tax collector for the State is a familiar and sanctioned device." A judgment for the State was upheld against the foreign corporation which had entered its appearance to contest the claim.

In *Miller Bros. Co. v. Maryland,* 347 U. S. 340, 98 L. Ed. 744, the Supreme Court reversed a judgment of this Court and held that the due process clause of the Fourteenth Amendment prevented Maryland from making Miller Brothers Company, a Delaware corporation, the collector of use tax on goods sold directly to inhabitants of Maryland at the corporation's store in Delaware. The vendor's only connection with Maryland was advertising in Delaware papers and radio stations that reached the notice of Marylanders, the occasional mailing of notices to former customers some of whom lived in Maryland, and the delivery of some purchases in Maryland by its own truck. Mr. Justice Jackson, who wrote the opinion of the majority of five Justices, noted that he had dissented in the *General Trading Co.* case and that whether or not in so doing "he made a correct application of principles of jurisdiction to the particular facts, it is clear that circumstances absent here were there present to justify the Court's approval of liability for collecting the tax." He continued: "That was the case of an out-of-state merchant entering the taxing state through traveling sales agents to conduct continuous local solicitation followed by delivery of ordered goods to the customers, the only nonlocal phase of the total sale being acceptance of the order. Probably, except for credit reasons, acceptance was a mere formality, since one hardly incurs the cost of soliciting orders to reject. The Court could properly approve the State's decision to regard such a rivalry with its local merchants as equivalent to being a local merchant."

In *Thompson v. Rhodes-Jennings Furn. Co.,* 268 S. W. 2d 376, the Supreme Court of Arkansas followed the *General Trading Co.* case on analogous facts, having concluded that *Miller Brothers* had in no way impaired its validity and authority. The Supreme Court denied *certiorari* under the

name of *Branyan & Peterson v. Thompson,* 348 U. S. 872, 99 L. Ed. 686. See also *Field Enterprises v. State* (Wash.), 289 P. 2d 1010, affirmed by the Supreme Court, 1 L. Ed. 2d 39, as reiterating that the commerce clause is not offended by what Maryland requires of appellant. We conclude that unless there is a controlling distinction between the facts here and those of *General Trading,* the answer here is given by that case. Appellant argues that there is a difference in that the salesmen in *General Trading* were servants of the foreign corporation continuously in its employ, while in the case at bar, the solicitors in Maryland were independent contractors not under supervision and were part time employees who often represented other vendors. Appellant's contention on this point seems to be directed at showing that there could be due process in requiring a corporation in the position of General Trading Company to act as collector of taxes, but that there would be a lack of due process in requiring one situated as is Topps to perform that function.

The fact that the solicitors in the present case were agents who were independent contractors, rather than agents who were servants makes no difference. It is beyond question that they were agents of Topps for the purpose of displaying its products by means of its catalogs, for the taking of orders for those products, for the forwarding of the orders to headquarters and for the purpose of accepting deposits on the sales. The activities of the individual solicitors may have been intermittent but in total their activities were regular, systematic and productive of a substantial flow of goods into Maryland. The Supreme Court made it plain in *International Shoe Co. v. Washington,* 326 U. S. 310, 90 L. Ed. 95, that an unqualified foreign corporation could be made subject to jurisdiction and compelled to make contributions required of local employers to the state unemployment compensation fund where its presence was evidenced only by regular and systematic solicitation of orders in the state by salesmen on commission, resulting in a continuous interstate flow of the corporation's products to resident buyers (the only additional activity was the display of samples). Mr. Justice Stone said *inter alia* that the presence of a corporation without, as well

as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it and such contacts of a corporation with the state of the forum as make it reasonable in the context of our federal system of government, to require the corporation to defend a particular suit brought there may satisfy the demands of due process. See also *United States v. Scophony Corporation,* 333 U. S. 795, 92 L. Ed. 1091. We think that activities carried on in behalf of the foreign corporation by agents who are independent contractors, in connection with the matters for which they are agents, are as much in behalf of the corporation as similar activities carried on by agents who are servants, and we see no significant distinction in the two situations. The test is the nature and extent of the activities. *State v. Penna. Steel Co.,* 123 Md. 212.

The Supreme Court gave indication of this in the *General Trading Co.* case, when it pointed out that *Felt & Tarrant Mfg. Co. v. Gallagher,* 306 U. S. 62, 83 L. Ed. 488, and *Nelson v. Sears, Roebuck & Co.,* 312 U. S. 359, 85 L. Ed. 888, were controlling although in the *Gallagher* case there were far more elaborate arrangements for soliciting orders (two exclusive distributors), and in the *Sears* case, the vendor had retail stores in the State, and said: "All these differentiations are without constitutional significance." In *Travelers Health Asso. v. Virginia,* 339 U. S. 643, 94 L. Ed. 1154, the foreign company was a non-profit membership association incorporated in Nebraska, where its only office was located. It conducted a mail order health insurance business, systematically soliciting new members, usually through the unpaid activities of Virginia residents who were already members. Virginia enjoined it from further solicitation of sales in the State. The Court held that its contacts with Virginia were sufficient to sustain jurisdiction, relying in part on the *International Shoe Co.* case. In *McGoldrick v. Berwind-White Coal Min. Co.,* 309 U. S. 33, 49, 84 L. Ed. 565, 572, the Supreme Court equated the New York City tax on sales for consumption in the City with the ordinary use tax, such as is before us, that the Court had previously sustained as constitutional. In *McGoldrick v. DuGrenier, Inc.,* 309 U. S. 70, 84

L. Ed. 584, a Massachusetts corporation accepted or rejected at its headquarters in Massachusetts orders solicited in New York City by an independent contractor, Stewart & McGuire, Inc., and shipped its products direct to the purchaser. It was held that to hold it liable to collect the tax did not infringe the Constitution. Professor Thomas Reed Powell, in a note in 57 Harvard L. R. 1086, 1090, *"Sales and Use Taxes: Collection from Absentee Vendors"*, says of the *Du-Grenier* case: "Although the New York headquarters and activities availed of by these vendors were not their own but those of another, these exclusive agents amounted to an alter ego who, except possibly for some difference in methods of compensation and control, did exactly what the vendor might do through its own hired men. Obviously it would open the door to easy devices for tax avoidance if slight shifts in the contractual arrangements between solicitors and vendors could make a difference." *Bomze v. Nardis Sportswear,* 165 F. 2d 33, held that activities in the State of an agent in form certainly and in substance essentially an independent contractor, made the principal subject to jurisdiction. In distinguishing a New York case, Judge Learned Hand said for the Court: "* * * we cannot see that it was important that the agent worked for several principals." See also *Labonte v. American Mercury Magazine* (N. H.), 96 A. 2d 200; *Fielding v. Superior Court* (1st App. Dist. Cal.), 244 P. 2d 968, 970; *Wooster v. Trimont Mfg. Co.* (Mo.), 203 S. W. 2d 411; *Holland v. Parry Nav. Co.,* 7 F. R. D. 471; *Johns v. Bay State Abrasive Products Co.,* 89 F. Supp. 654, 660; *Com. de Astral v. Boston Met. Co.,* 205 Md. 237; *Storey v. United Ins. Co.,* 64 F. Supp. 896; *Fletcher, Cyclopedia Corporations,* Perm. Ed., Vol. 18, Sec. 8718; *The Growth of the International Shoe Doctrine,* 16 University of Chicago L. R. 523; *Expanding Jurisdiction Over Foreign Corporations,* 37 Cornell L. Q. 458; *Enforcing State Consumption Taxes on Out-of-State Purchases,* 65 Harvard L. R. 301.

We think it clear from the authorities cited that appellant is not helped by the fact that its soliciting agents in Maryland were independent contractors, and that its activities in and in relation to Maryland clearly accord with the "traditional no-

tions of fair play and substantial justice" which the *International Shoe Co.* case says are proper tests to determine whether a State may exercise jurisdiction in a particular situation. The authorities establish that appellant is not denied due process of law by what the State has done. No question arises in the case as to the right to obtain jurisdiction *in personam* over the appellant. The State's right to enforce appellant's obligation to collect the tax by means of attachment is not challenged.

*Judgments affirmed, with costs.*