99 So.2d 292 (1957)
E. GREEN, as Comptroller of the State of Florida, Appellant,
v.
John P. PEDERSON, doing business as Africa, U.S.A., Appellee.
Supreme Court of Florida.
December 18, 1957.
Richard W. Ervin, Atty. Gen., Phillip Goldman, Asst. Atty. Gen., and Lewis H. Tribble, Tallahassee, for appellant.
Anderson & Gundlach, Fort Lauderdale, for appellee.
ROBERTS, Justice.
The appellee, plaintiff below, is engaged in the business of operating for profit a *293 zoological and botanical garden in this state, in the course of which he frequently purchases and acquires additional animals for breeding purposes and for display to the general public. Patrons are carried throughout the garden in a trackless motor vehicle resembling a miniature train. The instant litigation resulted from the action of the Comptroller, defendant below and appellant here, in making a use tax assessment, under Ch. 212, Fla. Stat. 1951, F.S.A., against appellee on the use of certain animals and two miniature trackless trains acquired from out-of-state sources.
The appellee paid the taxes under protest and applied to the Comptroller, under Sec. 212.15(4), Fla. Stat. 1951, F.S.A. for a "rehearing and re-examination" of the tax assessment. After a hearing held by the Comptroller's chief examiner, refund was denied  as to the tax on the animals on the ground that the exemption as to "occasional and isolated" sales applied only to the sales tax provisions of the Act and not to the use tax; and as to the trackless trains on the ground that the vehicles were not licensed under Sec. 320.08, Fla. Stat., F.S.A., and thus "do not qualify for exemption as motor vehicles." The appellee then filed the instant suit seeking, in effect, a declaratory decree as to the authority of the Comptroller to assess a use tax against property purchased out of the state from a seller who makes the sale as an "occasional and isolated" transaction; for an injunction as to future assessments against appellee of a use tax on such property; for a decree declaring arbitrary and unlawful the Comptroller's Rule 24, relating to the sales and use tax against motor vehicles; and for a refund of the taxes previously paid.
The cause was considered by the Chancellor on a stipulation of facts, referred to hereafter, and testimony heard by him, and a decree in favor of the appellee was entered. As to the use tax on the animals, the Chancellor found that under the terms of the Act and the Comptroller's Rule 91, "purchases outside of Florida should be treated the same as purchases inside of the State insofar as the `occasional and isolated sales' are concerned." As to the use tax on the miniature trackless train, the Chancellor found that "such motor vehicle should be licensed under F.S. 320. The fact that such vehicle had not been so licensed does not subject it to Florida sales tax." The Comptroller has appealed from the final decree.
The parties stipulated that the animals were purchased outside the state by the appellee from non-profit zoological institutions operated for the use and benefit of the public. It was further stipulated that
"The aforementioned zoos annd zoological gardens acquire and buy animals for their own use, benefit and study. However, due to the natural increase of the animals in the zoos, the zoological gardens from time to time have a surplus of animals. These animals are, when declared surplus, traded or sold to other zoological gardens or other purchasers. The general policy of the zoos is to trade a surplus animal with another zoological institution in order to improve the collection of the trader However, at times it is not possible to trade and the surplusage is then generally disposed of by sale for cash.
"3. It is further stipulated by and between the parties that the trackless motor vehicles which have the appearance of trains and train cars for use on the premises of `Africa, U.S.A.', do not run on tracks and are not licensed under Chapter 320, Florida Statutes."
The testimony of appellee's son, Jack Pedersen, was, in substance, that neither appellee nor the zoological institutions from whom the animals were purchased were in the business of selling animals; that because of the high mortality rate of animals in the zoos, increases of animals in one zoological society are usually traded for animals of another zoological society in order to replace the animals that die; that he had to beg each of the institutions to sell him the animals in question and that the *294 sale was then made only on the condition that he would ultimately trade with them. As to the trackless miniature trains, Pedersen testified that the vehicles were used principally to transport patrons in and about the premises of Africa, U.S.A.; that the federal government placed a transportation tax on monies received for rides in the vehicles; that on several occasions the vehicles have been driven on the streets of Boca Raton, Florida, and on the public highways between Boca Raton and Fort Lauderdale, Florida and have been driven in and about the streets of Fort Lauderdale, Florida, in parades and things of that nature.
The principal issues argued here by appellant are (1) whether the exemption of "occasional and isolated sales" made by the Sales and Use Tax Act, Ch. 212, Fla. Stat. 1951, F.S.A. (the law in effect at the time of the assessments here in question) applies to the use tax as well as the sales tax; and, if so, whether the facts justify a conclusion that the purchases of the animals here involved qualify under the exemption; and (2) whether the miniature trackless trains qualify as "motor vehicles" under the exemption provision of the Act, Sec. 212.08 (4), Fla. Stat. 1951, F.S.A. then in effect (since amended by Ch. 57-398, Acts of 1957).
We agree with the Chancellor that occasional and isolated sales are exempt from both the sales and the use tax under the provisions of the Act. Admittedly, the particular provision of the statute exempting such sales, Sec. 212.02(9), Fla. Stat. 1951, F.S.A. applies in terms to the sales tax only. But the provisions of the Act relating to the use tax show clearly that the use tax is to be levied upon the use of out-of-state purchases in the same manner and upon the same tangible personal property as is the sales tax on intrastate purchases. Sec. 212.06(4), Fla. Stat. 1951, F.S.A., provides as follows:
"On all tangible personal property imported or caused to be imported from other states, * * * and used by him, the `dealer' as herein defined, shall pay the tax imposed by this chapter on all articles of tangible personal property so imported and used, the same as if the said articles had been sold at retail for use or consumption in this state. For the purposes of this chapter, the use, * * * of tangible personal property, shall each be equivalent to a sale at retail, and the tax shall thereupon immediately levy and be collected in the manner provided herein, provided there shall be no duplication of the tax in any event." (Emphasis added.)
It is difficult to see how the Legislature could have found words of general import, applicable to all situations that might arise under the Act, that would more clearly have expressed its intention to place out-of-state and intrastate purchases upon exactly the same basis insofar as the privilege taxes imposed by the Act are concerned. Unquestionably, the sales and the use taxes are intended to be complementary to each other, and the Comptroller so recognizes in his Rule 91. See also Hartman, State Taxation of Interstate Commerce, Ch. VII, pp. 161 et seq.; Henneford v. Silas Mason Co., Inc., 1937, 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814; Nelson v. Sears, Roebuck & Co., 1941, 312 U.S. 359, 61 S.Ct. 586, 85 L.Ed. 888; General Trading Co. v. State Tax Commission, 322 U.S. 335, 64 S.Ct. 1028, 88 L.Ed. 1309. As stated in Henneford v. Silas Mason Co., Inc., supra [300 U.S. 577, 57 S.Ct. 527], involving a Washington sales and use tax statute that was attacked on the ground that the use tax on out-of-state purchases was a burden on interstate commerce: "Equality is the theme that runs through all the sections of the statute. * * * When the account is made up, the stranger from afar is subject to no greater burdens as a consequence of ownership than the dweller within the gates. The one pays upon one activity or incident, and the other upon another, but the sum is the same when the reckoning is closed." *295 The import of the Henneford decision is that, since the burden borne by the interstate transaction was balanced by an equal burden on the intrastate transaction, there was no discrimination and thus no burden on interstate commerce.
Thus, not only the clear terms of the Act but also our duty to interpret an Act so as to uphold its validity impels us to hold that the "occasional and isolated sales" exemption applies alike to out-of-state purchases and intrastate purchases. It was so held in State v. Bay Towing & Dredging Co., Inc., 1956, 265 Ala. 282, 90 So.2d 743, 746, involving two statutes  one imposing a tax upon sales within the state, but exempting casual and isolated sales, and the other imposing a tax upon the use of property purchased outside the state. The Alabama Supreme Court said:
"As we see it, if the use tax act is construed as imposing a tax on the use in this state of tangible personal property purchased outside the state in casual and isolated sales transactions, such tax would constitute an unlawful discrimination against interstate commerce, contrary to the Commerce Clause of the United States Constitution, Const. art. 1, § 8, cl. 3, since no similar or equivalent tax burden is imposed in connection with the purchase of such property in casual and isolated sales transactions within the state."
Many decisions of the United States Supreme Court were cited in support of the above statement. And we agree with the Alabama court that such decisions require the conclusion quoted above.
It must be held, therefore, that the "occasional and isolated sales" exemption applies to the use tax on out-of-state purchases as well as to the sales tax on intrastate purchases.
Nor do we think the Chancellor erred in holding that, if made in Florida, the sales of the animals would have been exempt as "occasional and isolated sales". The Comptroller's Rule 37 provides that
"(1) The tax does not apply to occasional and isolated sales made by a person who does not hold himself out as engaged in the business of selling tangible personal property. * * *
"(2) For example, sales by a person of his household furniture, by a farmer of his farm machinery or equipment, by a fisherman of his boat, or by a grocery store of its fixtures are exempt because such persons are not engaged in the business of selling tangible personal property of a similar type. * *"
The stipulated facts, quoted above, and the testimony at the trial, show clearly that the institutions from whom the appellee bought the animals did not hold themselves out as "engaged in the business of selling" the animals. The sales were obviously only incidental to the operation of the institutions for the use and benefit of the public. Cf. Stone v. M.L. Virden Lumber Co., 1949, 205 Miss. 841, 39 So.2d 498; State v. Bay Towing & Dredging Co., Inc., supra, 90 So.2d 743. While incidental sales may, by reason of continuity and systematic recurrence, cease to be "occasional and isolated", see State ex rel. City Loan & Savings Co. of Wapakoneta v. Zellner, 1938, 133 Ohio St. 263, 13 N.E.2d 235, no such situation is shown by the record here. Accordingly, we find no error in the Chancellor's decision as to the use tax on the animals.
On the question of whether the Chancellor erred in holding that the trackless miniature trains were entitled to exemption as "motor vehicles", the Comptroller's Rule 24, then in effect, provided that "The sales tax does not apply to the sale of new or used motor vehicles. For the purpose of this Act, a motor vehicle shall be any vehicle which is subject to the Motor Vehicle License Tax now in effect in the State of Florida." (Emphasis added.) This rule does not appear unreasonable and apparently carried forward the legislative intent in exempting "motor vehicles" from the sales and use tax. And the Chancellor *296 so held, by implication. We also agree with the Chancellor that the fact that the motor vehicles in question had not actually been licensed does not, per se, subject them to liability for a sales or use tax. Cf. Nolan-Peerler Motors v. Wood, 1937, 128 Fla. 756, 175 So. 523, holding that an automobile in stock is nonetheless a "motor vehicle" within the meaning of the constitutional exemption of such property from an ad valorem property tax, Sec. 13, art. 9, Fla. Const., F.S.A., even though not yet licensed nor operated on the public highways. So the real issue here is whether the Chancellor erred in holding that the vehicles in question "should be licensed under F.S. 320." We are compelled, reluctantly, to disagree with the Chancellor in his determination of this issue.
Sec. 320.01, Fla. Stat. 1951, F.S.A., defines "motor vehicle" as follows:
"(1) `Motor vehicle' includes automobiles, motorcycles, motor trucks and all other vehicles operated over the public highways and streets of this state and propelled by power other than muscular power, but does not include traction engines, road rollers and such vehicles as run only upon a track."
The appellee relies on another section of Ch. 320, to wit, Sec. 320.02, providing that "Every owner, or person in charge of a motor vehicle, trailer, semi-trailer, or motorcycle sidecar, which shall be operated or driven upon the highways of the state, or which shall be maintained in this state, shall * * * cause to be filed * * * a certified application for registration of same * * *." (Italics supplied.) But we think the italicized portion of this section adds nothing to the definition of a "motor vehicle", quoted above, and was added for the purpose of requiring the annual renewal of registration and re-licensing of motor vehicles, e.g., a house trailer, even though not actually being "operated over the public highways and streets of this state" at the expiration of the license year.
The primary purpose of the particular provisions of our Motor Vehicle License Law here involved, is to regulate the operation of motor vehicles on the highways and streets of this state. As stated in Herr v. Butler, 1931, 101 Fla. 1125, 132 So. 815, 817: "The Legislature, under its police power to protect the public from dangerous instrumentalities using the highways, has imposed rigid restaints, regulations, and restrictions upon the use of motor vehicles, * * *." And in Harper v. England, 1936, 124 Fla. 296, 168 So. 403, 406, it was said that the license tax on motor vehicles "is a tax imposed for the use of the state highway." Certainly, if the miniature trackless train had never been and did not expect to go outside the bounds of the appellee's premises the appellee could not reasonably be compelled to obtain a motor vehicle license and renew it annually; and we have the view that the fact that the vehicle occasionally traversed the public highways and streets on special occasions and, by inference, under special supervision, does not clearly bring it within the purview of the Motor Vehicle License Act. Cf. Forbes v. Bushnell Steel Construction Co., Fla. 1954, 76 So.2d 268, holding that the fact that a motor crane was operated on the highways was not decisive of the question of whether it was a "motor vehicle" within the constitutional exemption from an ad valorem property tax granted by Sec. 13, art. 9, Fla. Const. It might be noted that the appellee apparently shared our view, since he did not obtain a license for the vehicles in question although they had been purchased, and presumably operated, almost a year before the date upon which he was presented with a formal demand for payment of the use tax thereon by the Comptroller.
It is well settled that he who would shelter himself under an exemption clause in a tax statute must show clearly that he is entitled under the law to exemption; and the law is to be strictly construed as against the person claiming the exemption and in favor of the taxing power. Harper v. England, 1936, 124 Fla. 296, 168 So. 403; *297 Lummus v. Florida-Adirondack School, Inc., 1934, 123 Fla. 810, 168 So. 232; Miami Battlecreek v. Lummus, 1939, 140 Fla. 718, 192 So. 211; State ex rel. Miller v. Doss, 1941, 146 Fla. 752, 2 So.2d 303; State v. Inter-American Center Authority, Fla. 1955, 84 So.2d 9. Applying this rule to the facts shown by this record, we can reach no other conclusion than that the appellee has failed to show that he is entitled to exemption from the use tax on the vehicles in question.
The other question argued here by the Comptroller has been considered but no reversible error has been found.
For the reasons stated, that portion of the decree exempting the appellee from the use tax on the animals is affirmed; that portion of the decree exempting the appellee from the use tax on the miniature trackless trains is reversed.
Affirmed in part and reversed in part.
TERRELL, C.J., and THOMAS, HOBSON and DREW, JJ., concur.