350 So.2d 349 (1977)
Ernest SHERMAN, Appellant,
v.
RESERVE INSURANCE COMPANY, an Illinois Corporation, Appellee.
No. 76-1676.
District Court of Appeal of Florida, Fourth District.
August 12, 1977.
Rehearing Denied October 24, 1977.
*350 W. Clinton Wallace, of Billings, Frederick, Wooten & Honeywell, P.A., Orlando, for appellant.
W. Lane Neilson, of Pitts, Eubanks, Ross & Rumberger, P.A., Orlando, for appellee.
CROSS, Judge.
Appellant, Ernest Sherman, appeals a summary final judgment entered in favor of appellee-defendant, Reserve Insurance Company, in an action to secure personal injury protection benefits under an automobile insurance policy. We reverse.
*351 The appellant was injured as a result of a motor vehicle accident while he was operating an automobile owned by one Arlie Miller. The appellee, insurer of Mr. Miller's vehicle, denied coverage to the appellant for the reason that at the time of the accident appellant owned a vehicle which, although duly registered with the State of Florida, was uninsured. At the time of the accident which gives rise to the instant litigation, Mr. Sherman's automobile was totally inoperable as the result of a mechanical failure which had occurred during a fishing trip a month earlier in the Town of Cocoa. Although Mr. Sherman had maintained automobile insurance as required by law up until the time of the mechanical breakdown, he had allowed such insurance to lapse because of the inoperable condition of his vehicle. Mr. Sherman's automobile was not repaired until some time after the accident which occurred while he was operating Mr. Miller's automobile. Subsequently, this action was commenced, and upon completion of pleading and discovery, both parties moved for summary judgment. The trial court, after hearing, entered its order granting appellee's motion for summary judgment and summary final judgment was entered thereon. This appeal then followed.
The thrust of the appeal is whether an automobile which has been rendered inoperable due to mechanical failure or defect is subject to the security requirements of the Florida Automobile Reparations Reform Act (No-Fault). Section 627.730, et seq., Florida Statutes (1971).
Section 627.733, Florida Statutes (1971), provides that every owner or registrant of a motor vehicle required to be registered and licensed in the State of Florida shall maintain security on such vehicle. Section 320.01, Florida Statutes (Supp. 1977), defines "motor vehicle" to include:
"Automobiles, ... and all other vehicles operated over the public streets and highways of this state and used as a means of transporting persons or property over the public streets and highways and propelled by other than muscular power ..." (Emphasis added)
The question of when a motor vehicle is required to be registered is set forth in § 320.02, Florida Statutes (1975), which provides:
"Every owner ... of a motor vehicle ... which shall be operated or driven upon the highways of this state, or which shall be maintained in this state, shall for each such vehicle so owned, cause to be filed by mail or otherwise, ... a certified application for registration of same ..." (Emphasis added)
In discussing the relationship between § 320.01 and the emphasized language of § 320.02, the Florida Supreme Court stated in the case of Green v. Pederson, 99 So.2d 292 (Fla. 1957), that:
"[T]he italicized portion of this section [§ 320.02] adds nothing to the definition of a `motor vehicle' .. ., and was added for the purpose of requiring the annual renewal of registration and relicensing of motor vehicles, e.g., a house trailer, even though not actually being `operated over the public highways and streets of this state' at the expiration of the license year." (at 296)[1]
While it is true that the definition of "motor vehicle" has become more restrictive since the Florida Supreme Court handed down its decision in the Green case,[2] the law still requires that every motor vehicle, whether being operated over the public highways and streets of this state or maintained for that purpose, comply with the *352 registration and licensing requirements set forth in the Florida Statutes. However, the perpetual registration requirement of the Statutes of the State of Florida remains applicable only so long as the instrumentality continues to meet the definition of "motor vehicle" as set forth in § 320.01, Florida Statutes (1972).
Section 320.01, Florida Statutes (1972), sets forth three requisites which must be fulfilled before an instrumentality can be legally defined as a "motor vehicle" and therefore be subject to the registration requirement set forth in the Florida Statutes. First, the instrumentality must be operated over the public streets and highways of this state or maintained for that purpose. Section 320.01, Florida Statutes (1972), Section 320.02, Florida Statutes (1975); Green v. Pederson, supra. Second, the instrumentality must be capable of being used for transporting persons or property over the public streets and highways. Finally, the instrumentality must be propelled by other than muscular power. The choice of the conjunctive "and" by the legislature in drafting this provision indicates that it was the intent of the framers to require that all three of the requirements set forth in § 320.01, Florida Statutes, be met before an instrumentality is defined by law as a "motor vehicle."
In applying the statutory definition of "motor vehicle," we hold that an automobile, which has been rendered inoperable due to mechanical failure or defect, does not fall within the definition established by law and therefore is neither required to be registered and licensed nor to maintain security under the provisions of the Florida Automobile Reparations Reform Act. It is clear that an automobile rendered inoperable due to mechanical defects cannot possibly fulfill any of the three requirements set forth in § 320.01, Florida Statutes. The instrumentality cannot be operated over the public streets under its own power, nor is it suitable for transporting persons or property over the public highways. Until such instrumentality is repaired and restored to an operable condition, it remains an assemblage of components which is incapable of functioning as a motor vehicle. The result we reach today is consistent not only with simple logic, but is also consistent with the generally accepted scope of the state's police powers in regulating traffic over public thoroughfares, and in no way serves to undermine the intent of the framers of the Florida Automobile Reparations Reform Act.
An interpretation of the applicable statutory provision which would require that all automobiles, once registered and licensed, maintain such registration and meet the security requirements of the Florida Automobile Reparations Reform Act until such time as that automobile finds its final resting place in some junkyard would lead to absurd results. Consider, for example, the case of an individual purchasing a classic automobile for restoration. The automobile while being stored may remain garaged and be totally inoperable for a time period of many months, although the operator is possessed with the intent to place that automobile back on the roadway at some indefinite future date in a restored condition. Surely the legislature in drafting § 320.01, § 320.02 and § 627.733, Florida Statutes, did not intend that the law require that individual to maintain current registration and suffer the burden of paying insurance premiums for an automobile for which there exists no possibility of being involved in an automobile accident on the public roadways. The same rationale exists for an automobile which is rendered temporarily inoperable due to mechanical failure, which may sit for an indefinite period until such time as repairs can be completed.
Moreover, the legislature's primary concern in dealing with motor vehicles is their regulation while operated over the public streets and highways of this state. Again, the opinion of the Florida Supreme Court in Green v. Pederson, supra, is instructive:
"The primary purpose of the particular provisions of our Motor Vehicle License Law here involved [§ 320.01, § 320.02] is to regulate the operation of motor vehicles *353 on the highways and streets of this state. As stated in Herr v. Butler, 1931, 101 Fla. 1125, 132 So. 815, 817: `The Legislature, under its police power to protect the public from dangerous instrumentalities using the highways, has imposed rigid restraints, regulations, and restrictions upon the use of motor vehicles, ...' And in Harper v. England, 1936, 124 Fla. 296, 168 So. 403, 406, it was said that the license tax on motor vehicles `is a tax imposed for the use of the state highway.'" (at 296)
Furthermore, our holding today does not in any way conflict with the underlying objectives of the Florida Automobile Reparations Reform Act. These legislative objectives as discussed by the Florida Supreme Court in Lasky v. State Farm Insurance Company, 296 So.2d 9 (Fla. 1974), include:
"... a lessening of the congestion of the court system, a reduction in concomitant delays in court calendars, a reduction of automobile insurance premiums and an assurance that persons injured in vehicular accidents would receive some economic aid in meeting medical expenses and the like, in order not to drive them into dire financial circumstances with the possibility of swelling the public relief rolls... ." (at 16)
The legislature may require owners and registrants of motor vehicles operated over the public roads to maintain insurance for their own protection. Such a law furthers the objectives of the legislature in adopting the No-Fault Insurance Act. However, no public interest is served by denying personal injury protection benefits to an individual involved in an accident in another's automobile merely because that individual has an inoperable automobile in storage upon which the insurance coverage has intentionally been allowed to lapse because of its inoperable condition. Such an individual may not be considered the owner or registrant of a motor vehicle required to be registered and licensed in this state, and therefore does not fall within the purview of the security requirements of § 627.733, Florida Statutes (1971).
Accordingly, the summary final judgment is reversed and the cause remanded for further proceedings consistent with the views herein expressed.
Reversed and remanded.
KOVACHEVICH, ELIZABETH A., J., concurs.
MAGER, J., dissents, with opinion.
MAGER, Judge, dissenting:
While the majority has presented a very forceful argument supporting a reversal I am somewhat more persuaded by the rationale reflected by our sister court in Tapscott v. State Farm Mutual Automobile Ins. Co., 330 So.2d 475 (Fla.1st DCA 1976). I would, therefore, affirm the judgment based upon the decision in Tapscott.
NOTES
[1] For a discussion of the status of house trailers as "motor vehicles" see Palethorpe v. Thomson, 171 So.2d 526 (Fla. 1965).
[2] Under discussion in the Green case was former § 320.01, Florida Statutes (1951), which defined "motor vehicle" to include:

"(1) ... automobiles, motorcycles, motor trucks and all other vehicles operated over the public highways and streets of this state and propelled by power other than muscular power, but does not include traction engines, road rollers and such vehicles as run only upon a track."