349 So.2d 717 (1977)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,
v.
Guy A. O'KELLEY, Jr., Appellee.
No. FF-210.
District Court of Appeal of Florida, First District.
August 22, 1977.
Rehearing Denied September 13, 1977.
Marion R. Shepard, of Mathews, Osborne, Ehrlich, McNatt, Gobelman & Cobb, Jacksonville, for appellant.
David R. Lewis, of Blalock, Holbrook, Lewis, Paul & Isaac, Jacksonville, for appellee.
ERVIN, Judge.
The only question before us is whether a two-wheeled vehicle described as a minimotorbike is a motorcycle within the meaning of the Florida Automobile Reparations Reform Act, thereby excluding its occupant from coverage. The court below held it was not and we agree.
O'Kelley's seven year old son, who resided with him, was injured while riding an unlicensed minibike on the sidewalk in front of his home where he collided with a motor *718 vehicle parked across the sidewalk. O'Kelley claimed personal injury protection benefits from his insurer, State Farm. State Farm denied such benefits were available on the ground the child was an occupant of a motorcycle and thus was precluded by Section 627.736, Florida statutes (Supp. 1976), from coverage. Following the denial of State Farm's motion to dismiss O'Kelley's complaint for damages, the case was tried nonjury and the court entered judgment for O'Kelley in the sum of $7,240.50, including interest, costs and attorney's fees.
At trial a Harley-Davidson motorcycle dealer differentiated the minibike involved in the accident from a motorcycle in that the latter has larger wheels and a transmission. He also stated the bike had less than five brake horsepower and was not equipped with headlights, taillights, stoplights or a horn.
Mr. O'Kelley, whose brother owned the minibike, testified that it had a maximum of 3 1/2 horsepower. Contained in the record is a photograph of Mr. O'Kelley standing, holding in his hands the minibike involved in the accident. The photograph shows the handlebars of the bike protruding slightly above his head with its wheels approximately even with Mr. O'Kelley's waist.
We cannot accept State Farm's argument that such a vehicle is a motorcycle and that Mr. O'Kelley is thereby excluded from PIP benefits under his policy. To do so would result in a departure from the common understanding of what the word contemplates. The No Fault Act contains no definition of the words "motorcycle" or "minibike". It is therefore necessary to look elsewhere for appropriate definitions. Motorcycle is defined by Webster's Third New International Dictionary (1967) as "a 2-wheeled tandem automotive vehicle having 1 or 2 riding saddles and sometimes having a third wheel for the support of a sidecar." Minibike is defined in Webster's New Collegiate Dictionary (1976) as "a small one-passenger motorcycle having a low frame and elevated handlebars."
Section 316.003(22), Florida Statutes (1975), of the Florida Uniform Traffic Control Law, was amended by Ch. 76-286, § 1, Laws of Florida, effective July 1, 1976, to provide:
"(22) Motorcycle.  Any motor vehicle with a motor in excess of a rating of 1 1/2 brake horsepower having a seat or saddle for the use of the rider and designed to travel on not more than three wheels in contact with the ground, but excluding a tractor." (Emphasis in original.)
If literally applied, the above definition would seem to fit the vehicle involved in the accident since it was not a tractor, had no more than two wheels and had a motor rated in excess of 1 1/2 horsepower. However immediately following the above definition, subsection (23) states:
"(23) Motor-driven cycles.  Every motorcycle and every motor scooter with a motor which produces not to exceed five-brake horsepower, including every bicycle propelled by a helper motor rated in excess of 1 1/2 brake horsepower." (Emphasis in original.)
Thus a distinction is made between motorcycles in subsection (22), and motorcycles under subsection (23), the latter being included within the term "motor-driven cycles." The primary distinction is that the latter vehicles have a motor which does not exceed five-brake horsepower. The unrefuted testimony in the case below was that the vehicle involved in the accident did not exceed five horsepower. The only certain conclusion which may be drawn from the above definitions is that it is uncertain whether a two-wheeled motorbike having no more than five-brake horsepower is a motorcycle.
While courts are not at liberty to resort to rules of statutory interpretation where the language of the statute is plain and unambiguous, Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693 (1918), where the words are ambiguous the cardinal rule of construction is to interpret the statute in such a way that effect be given to the intention of the legislature. Tyson v. Lanier, 156 So.2d 833 (Fla. 1963).
*719 Concerning the legislative intent in excluding motorcycles from coverage under the No-Fault Act, we believe the following language from State Farm Mut. Auto. Ins. Co. v. Nicholson, 337 So.2d 860, 862 (Fla. 2nd DCA 1976) is instructive:
"We think the better view and the intent of the legislature in enacting the no-fault act was to exclude from coverage the normal meaning attributed to the word `motorcycle,' given the applicable law and modern definitions. That definition is normally associated with a two-wheel tandem vehicle which the operator straddles without benefit of any enclosure and which must be balanced in operation to maintain equilibrium. The legislature, because of these features, undoubtedly sought to exclude these types of vehicles since the propensity for accidental injury during operation is so much higher." (Emphasis supplied.)
The propensity for accidental injury during the operation of an unlicensed minibike can hardly be said to be that which we have traditionally associated with motorcycles. However the definition provided in Nicholson for motorcycle could as easily be applied to bicycles. Compare the definition for the latter as set forth in Section 316.003(2), Florida Statutes (Supp. 1976):
"(2) Bicycle.  Any device propelled by human power, or any `moped' propelled by a pedal activated helper motor with a manufacturer's certified maximum rating of 1 1/2 brake horsepower, upon which any person may ride, having 2 tandem wheels, either of which is 20 inches or more in diameter, and including any device generally recognized as a bicycle though equipped with 2 front or 2 rear wheels."
Thus we are faced with another ambiguity. If a "moped", as defined under subsection (2), is equipped with a motor not exceeding 1 1/2 brake horsepower, it is a bicycle. If, however, a bicycle, under subsection (23), has a motor rated between 1 1/2 to five-brake horsepower, it is a "motor-driven cycle." Presumably, if in excess of five-brake horsepower, it would qualify as a motorcycle under subsection (22). These overlapping ambiguities are all too apparent.
We simply do not believe, given the nature of the vehicle involved, a small, unlicensed low horsepower motorbike, that the legislature intended to exclude the occupants of such vehicles from PIP benefits when not operated on the public highways. We should not construe a statute in such a manner as to reach an illogical or ineffective conclusion when another construction is possible. Gracie v. Deming, 213 So.2d 294 (Fla. 2nd DCA 1968). To construe the statute in the manner argued by State Farm would be illogical, unreasonable and a departure from common sense.
Accordingly we feel the only logical interpretation which can be accorded to the word "motorcycle" is that the motor minibike involved in the accident is a motordriven cycle as defined under Section 316.003(23), and is not a motorcycle as contemplated by Section 627.736.
AFFIRMED.
RAWLS, Acting C.J., concurs.
SMITH, J., dissenting.
SMITH, Judge, dissenting:
I conceive that this vehicle is a motorcycle as properly defined in State Farm Mut. Auto. Ins. Co. v. Nicholson, 337 So.2d 860, 862 (Fla.2d DCA 1976):
"We think the better view and the intent of the legislature in enacting the no-fault act was to exclude from coverage the normal meaning attributed to the word `motorcycle,' given the applicable law and modern definitions. That definition is normally associated with a two-wheel tandem vehicle which the operator straddles without benefit of any enclosure and which must be balanced in operation to maintain equilibrium. The legislature, because of these features, undoubtedly sought to exclude these types of vehicles since the propensity for accidental injury during operation is so much higher."
It appears that the majority decision here is influenced by two features which I consider *720 irrelevant: the facts that this minibike was not being operated on the public highways when the accident occurred and that, not being intended for such operation, it was unlicensed. Those distinguishing features would apply as well to any motorcycle operated and intended to be operated exclusively on trails through private property. I believe the legislature intended that all such motorcycle riders should be separately classified for purposes of the Automobile Reparations Reform Act, assuming of course that the motor exceeds 1 1/2 brake horsepower.
I would therefore reverse the judgment of the circuit court.