375 So.2d 898 (1979)
Clifford Douglas WARD, Appellant,
v.
FLORIDA FARM BUREAU CASUALTY INSURANCE COMPANY and Allstate Insurance Company, Appellee.
No. LL-274.
District Court of Appeal of Florida, First District.
October 17, 1979.
Michael Jones of Selby, Chesser, Wingard & Barr, Fort Walton Beach, for appellant.
Richard M. Denney of Timmel & Simpson, Fort Walton Beach, for appellee.
LARRY G. SMITH, Judge.
The question on this appeal is whether the insurer (appellee) was entitled to a summary judgment, granted by the trial court, denying PIP benefits[1] to plaintiff (appellant), because he was the owner of a motor vehicle not covered by insurance[2] as required by law[3] in order to be entitled to those benefits[4]. We find that the trial court erred in granting summary judgment adverse to appellant, and reverse.
*899 The facts are that appellant owned a 1973 Vega that became inoperable because of a "blown engine" on or about June 1, 1976. The car was towed to a service station where it remained for a period of time without being repaired, the reason being that appellant had no money to pay for repairs. On September 20, 1976, while his automobile was inoperable and uninsured, appellant was injured in an accident while operating a vehicle owned by a friend. At the time of the accident, appellant was residing with his father, who was insured under a policy issued by appellee, Florida Farm Bureau, which included coverage for PIP benefits available to "a relative of the owner residing in the same household", who is "not himself the owner of a motor vehicle with respect to which security is required ...". Section 627.736(4)(d)3, Florida Statutes (1975). After the accident, repairs were begun on appellant's automobile (with funds supplied by appellant's father) and completed, after about one and one-half weeks, on October 12, 1976. Thereafter, appellant made a claim for PIP benefits against his father's insurer, Florida Farm Bureau, which denied coverage. Appellant filed suit against the appellee-insurer, and summary judgment of nonliability was entered in appellee's favor upon its contention that appellant's ownership of an uninsured automobile prevented his recovery, under Section 627.736(4)(d)3, Florida Statutes (1975).
Appellant alleged in his complaint that his car was completely inoperable, and argues here that it was not being "maintained", and thus did not fall within the purview of the Florida Automobile Reparations Reform Act requiring security.[5] The most recent case relied upon by appellant is the decision of the District Court of Appeal, Fourth District, in Sherman v. Reserve Insurance Company, 350 So.2d 349 (Fla. 4th DCA 1977), in which the court found coverage based upon the reasoning that an automobile which has been rendered inoperable due to mechanical defect, does not fall within the definition of "motor vehicle" established by law,[6] and is therefore neither required to be registered and licensed[7] nor be insured under the Florida Automobile Reparations Reform Act. The Sherman court found that Sections 320.01, 320.02 and 627.733, Florida Statutes (1975) were required to be considered together, and that, so considered, no legislative intent could be discerned which would require the owner of an inoperable automobile to maintain current registration and pay insurance premiums for an automobile "for which there exists no possibility of being involved in an automobile accident on the public highways"[8]. The court expressly extended this rationale to an automobile rendered "temporarily inoperable due to mechanical failure"[9]. It is noted that in the Sherman case (as argued here), the owner had allowed the insurance to lapse because of the inoperable condition of his automobile.
The District Court of Appeal, Third District, in Williams v. Leatherby Insurance Company, 338 So.2d 70 (Fla. 3rd DCA 1976), cert. denied 345 So.2d 429 (Fla. 1977) (decided prior to Sherman), reached a conclusion opposite to that in Sherman, but the Williams' opinion does not disclose what the *900 court considered to be the effect, if any, of Sections 320.01 and 320.02, Florida Statutes (1975)[10]. In Williams the court denied coverage under circumstances which disclose that, although the vehicle had become fully inoperable[11] before the accident, it had been continuously driven for more than a year prior to the accident, and was licensed and registered at the time of the accident. The fact that it was "temporarily immobile and inoperable", said the court, "has no effect on Section 627.733(1), Florida Statutes, or on the requirement for security under this set of facts"[12].
The Williams' court noted apparent conflict between its holding and the decision of this court in Staley v. Florida Farm Bureau Mutual Ins. Co., 328 So.2d 241 (Fla. 1st DCA 1976). In Staley the plaintiff alleged that he was the owner of an automobile which was not insured, but which was not being operated at the time of nor was in any way connected with the accident for which benefits were being sought. Upon these allegations this court affirmed the trial judge's dismissal of the complaint with prejudice. In so doing, however, this court, in an opinion by now retired Judge Tyrie A. Boyer, clearly invoked the same reasoning later followed by the Fourth District in the Sherman case in determining under what circumstances an automobile must be registered and licensed, and consequently insured, in order to render the owner subject to the exclusionary provisions of the Florida Automobile Reparations Reform Act. In Staley the court stated:
"... Had appellant alleged that said automobile was not `operable' as distinguished from `not being operated', an entirely different situation would have been presented. In order to arrive at the conclusion reached by the learned trial judge, it is imperative that: (a) Appellant's vehicle shall have been one `required to be registered and licensed in Florida' (See F.S. 320.35), and (b) Appellant shall have been the owner of a motor vehicle `with respect to which security is required under [this act]' (See F.S. 627.736(4)(d)4 a.)
"Had appellant's motor vehicle been inoperable or had it been in storage it would not have been a vehicle required to be registered and licensed in Florida. Even if it had in fact been licensed but inoperable or stored it would not have been a motor vehicle with respect to which security is required under the act . .". (Emphasis supplied) (Opinion, page 243).
However, appellee urges that this court's later decision in Tapscott v. State Farm Mutual Automobile Ins. Co., 330 So.2d 475 (Fla. 1st DCA 1976) compels a conclusion favorable to it in the case at bar. In Tapscott, a summary judgment for the insurer was affirmed where plaintiff's uninsured vehicle became "temporarily inoperable" with clutch and transmission problems for four days prior to the accident. While the result in Tapscott appears, upon first impression, to represent a departure from the Staley decision, we do not think that this was intended or that it did in fact. We reach our conclusion primarily because the Tapscott case expressly reiterated the rationale of the Staley opinion that only automobiles required to be registered are subject to the Automobile Reparations Reform Act; and that there are no registration or security requirements for motor vehicles "which are neither operated over the public streets or highways of Florida nor maintained for that purpose" (Tapscott opinion, page 477, citing Kotich v. Criterion Ins. Co., 38 Fla. Supp. 199 (C.C. Escambia Co. 1973), and Sections 320.01(1)(a), 320.02(1), and 320.35, Florida Statutes (1975)). The Tapscott opinion did, however, place emphasis *901 upon the question of whether the automobile was being "maintained" or not, as the criterion for application of the registration and security requirements, as opposed to the emphasis in the Staley and Sherman opinions upon the somewhat more objective test of whether the vehicle is "inoperable".
But aside from the requirement that we must consider the somewhat more subjective factor of whether the car was being "maintained" under the Tapscott case, the factual differences between Tapscott and the circumstances presented by appellant in this case lead us to the conclusion, which we believe is consistent with Tapscott, that appellant's automobile was not one required to be insured at the time he suffered his accident. In Tapscott, the court emphasized that the vehicle was temporarily inoperable (for only four days prior to the accident), there was no claim and no basis for claiming abandonment of the vehicle as a means of transportation on the public streets and highways, and there was no evidence of the owner's intention "no longer to maintain her automobile for its usual purpose" (Tapscott opinion, page 477). Also, in Tapscott, the insurance on the car was cancelled for reasons unconnected with its operability.
By contrast, here Ward's automobile had been disabled for nearly four months, at the time of the accident, and during that time, so far as the record shows, appellant took no steps to have it repaired (albeit his decision was due to lack of financial resources). Furthermore, his testimony by way of deposition indicates (if not conclusively, at least sufficient to create genuine issues of fact) that he had allowed the registration and license to lapse because of the inoperable condition of the car[13]. Finally, the car was repaired, eventually, because appellant's father furnished the necessary funds. We think it would be stretching the term far beyond anything contemplated by the Tapscott decision to hold that appellant's automobile, assuming these facts as stated, was being "maintained" for operation on the streets and highways prior to and at the time of the accident.
Here, we recognize that the trial judge had before him only the pleadings and appellant's deposition. No affidavits or other proof was offered by appellee in opposition to appellant's deposition testimony; and although appellant's testimony may not be considered a model of clarity and certainty, it was, in our opinion, sufficient to avoid an adverse summary judgment.
The judgment appealed from is reversed and the cause is remanded for further proceedings consistent with this opinion.
MILLS, C.J., and BOOTH, J., concur.
NOTES
[1] Florida Automobile Reparations Reform Act (No Fault), Section 627.730, et seq., Florida Statutes (1975).
[2] Section 627.733(3) Florida Statutes (1975) "Required Security" sets forth the requirement of liability insurance under Chapter 324, the "Financial Responsibility Law", modified to provide the benefits and exemptions contained in the Florida Automobile Reparations Reform Act.
[3] Section 627.733(1) Florida Statutes (1975) provides:

"(1) Every owner or registrant of a motor vehicle required to be registered and licensed in this state shall maintain security as required by subsection (3) in effect continuously throughout the registration or licensing period."
[4] Section 627.736(4)(d)3, Florida Statutes (1975) provides as follows:

"(d) The insurer of the owner of a motor vehicle shall pay personal injury protection benefits for:
* * * * * *
"3. Accidental bodily injury sustained by a relative of the owner residing in the same household, under the circumstances described in subparagraph 1. or subparagraph 2., provided the relative at the time of the accident is domiciled in the owner's household and is not himself the owner of a motor vehicle with respect to which security is required under ss. 627.730-627.741."
[5] See footnotes 1-4, supra.
[6] Section 320.01(1)(a), Florida Statutes (1975) defines "motor vehicle", to include:

"Automobiles, ... and all other vehicles operated over the public streets and highways of the state and used as a means of transporting persons or property over the public streets and highways and propelled by power other than muscular power, . .".
[7] Section 320.02(1), Florida Statutes (1975) sets forth the requirements for registration of motor vehicles as follows:

"Every owner ... of a motor vehicle ... which shall be operated or driven upon the highways of this state, or which shall be maintained in this state, shall for each such vehicle so owned, cause to be filed by mail or otherwise, ... a certified application for registration of same . .". (Emphasis supplied)
[8] Sherman v. Reserve Insurance Company, opinion page 352.
[9] Id., at page 352.
[10] The Third District Court of Appeal, in Tavares v. Allstate Ins. Co., 342 So.2d 551 (Fla. 3rd DCA 1977), pointed out for consideration by the trial court the Staley and Tapscott decisions (cited infra) of the District Court of Appeal, First District, but without expressing any opinion on the merits.
[11] The transmission "gave out" more than two months before the accident, was pushed to the owner's mother's house for storage, and was not repaired until after the accident. Williams v. Leatherby Ins. Co., opinion page 71.
[12] Id., page 72.
[13] Appellant's brief also states that the insurance was allowed to lapse after the car became inoperable, and this contention is not refuted by appellee. However, we have been unable to find record support for this assertion.