416 So.2d 875 (1982)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,
v.
Arthur LINK, Jr., Appellee.
No. 81-1315.
District Court of Appeal of Florida, Fifth District.
July 14, 1982.
*876 Joe G. Dykes, Jr. of Landis, Graham, French, Husfeld, Sherman & Ford, P.A., DeLand, for appellant.
Fred S. Disselkoen, Jr. of Duffett, Seps & Akers, Ormond Beach, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
State Farm appeals from a summary judgment declaring that Arthur Link, Jr., is entitled to personal injury protection (PIP) benefits from State Farm. Link was struck by an automobile while operating a moped and was injured. State Farm had issued an insurance policy on Link's automobile (not involved in this accident) but declined to pay him PIP benefits.
Under the Florida Automobile Reparations Reform Act,[1] the insurer of the owner of a motor vehicle must pay PIP benefits for accidental bodily injury sustained in this state by the owner while (1) occupying a motor vehicle or (2) while not an occupant of a self-propelled vehicle if the injury is caused by physical contact with a motor vehicle. § 627.736(4)(d)(1), Fla. Stat. (Supp. 1980).
Section 627.732(1), defines "motor vehicle" as:
[A]ny self-propelled vehicle which is of a type both designed and required to be licensed for use on the highways of this state except mopeds, as defined in s.316.003(2), ... .
By statutory definition, a moped is not a "motor vehicle." Therefore, State Farm is required to pay PIP benefits only if the injury was sustained while Link was "not an occupant of a self-propelled vehicle."
State Farm contends that because mopeds were specifically excepted from the definition of motor vehicles and as motor vehicles are defined as self-propelled vehicles, then mopeds must be self-propelled vehicles. Section 627.732(1), however, specifically refers to mopeds as defined in section 316.003(2).[2] Section 316.003 provides for mopeds within the definition of "Bicycles":
(2) Bicycle.  Any device propelled by human power, or any moped propelled by a pedal-activated helper motor with a manufacturer's certified maximum rating of 1 1/2 brake horsepower, upon which any person may ride, having two tandem wheels, either of which is 20 inches or more in diameter, and including any device generally recognized as a bicycle though equipped with two front or two rear wheels.
*877 Section 316.003 also provides the following definitions:
(21) Motor vehicle.  Any vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, but not including any bicycle or "moped" as defined in subsection (2).
(64) Vehicle.  Any device, in upon, or by which any person or property is or may be transported or drawn upon a highway, except bicycles or mopeds as defined in subsection (2) or devices used exclusively upon stationary rails or tracks.
The moped involved here could be pedaled, but could also utilize a motor rated by the manufacturer as having a maximum rating of 1 1/2 brake horsepower. State Farm does not dispute that Link's moped is a bicycle under chapter 316 but rather argues that this chapter should not be used to define terms under the no-fault insurance act.
As was mentioned above, section 627.732(1) excepted mopeds as defined in section 316.003(2) from its definition of motor vehicles. As the no-fault insurance act did not specifically define mopeds but instead relied on the definition in chapter 316, we believe that the Legislature intended to incorporate this definition into the no-fault insurance act. Contrary to State Farm's contention, the two acts are not totally unrelated. Both acts concern the use and misuse of various types of vehicles. In construing rights and duties under the no-fault insurance act, other courts have looked to the definitions in chapter 316. See, e.g., Ward v. Florida Farm Bureau Cas. Ins., 375 So.2d 898 (Fla. 1st DCA 1979); Sherman v. Reserve Ins. Co., 350 So.2d 349 (Fla. 4th DCA 1977); State Farm Mutual Auto. Ins. Co. v. O'Kelley, 349 So.2d 717 (Fla. 1st DCA 1977).
The use of the definitions in chapter 316 would be unacceptable only if it led to a result inconsistent with the legislative intent in enacting the no-fault insurance act. See State Farm Mut. Auto. Ins. Co. v. O'Kelley, 349 So.2d at 718. In O'Kelley, the court held that a minibike with between 3 1/2 to 5 brake horsepower which was involved in an accident was a "motor-driven cycle" as defined under section 316.003(23)[3] and not a motorcycle as contemplated by section 627.736 and thus the insurance carrier was required to pay PIP benefits to the plaintiff.
In considering the legislative intent in excluding motorcycles from coverage under the no-fault act,[4] the court in O'Kelley found the following language from State Farm Mut. Auto. Ins. Co. v. Nicholson, 337 So.2d 860, 682 (Fla. 2d DCA 1976), instructive:
We think the better view and the intent of the legislature in enacting the no-fault act was to exclude from coverage the normal meaning attributed to the word `motorcycle,' given the applicable law and modern definitions. That definition is normally associated with a two-wheel tandem vehicle which the operator straddles without benefit of any enclosure and which must be balanced in operation to maintain equilibrium. The legislature, because of these features, undoubtedly sought to exclude these types of vehicles since the propensity for accidental injury during operation is so much higher.
The court in O'Kelley then observed:
The propensity for accidental injury during the operation of an unlicensed minibike can hardly be said to be that which we have traditionally associated with motorcycles.
* * * * * *

*878 We simply do not believe, given the nature of the vehicle involved, a small, unlicensed low horsepower motorbike, that the legislature intended to exclude the occupants of such vehicles from PIP benefits when not operated on the public highways. We should not construe a statute in such a manner as to reach an illogical or ineffective conclusion when another construction is possible. Gracie v. Deming, 213 So.2d 294 (Fla. 2d DCA 1968). To construe the statute in the manner argued by State Farm would be illogical, unreasonable and a departure from common sense.
349 So.2d at 719.
State Farm correctly points out that chapter 77-468, Laws of Florida, substituted "self-propelled vehicle" for "motor vehicle or motorcycle" for purposes of excluding PIP benefits. However, this change does not compel the result desired by State Farm. Had it intended to limit recovery under PIP solely to pedestrians, the Legislature could have simply stated so.
Under chapter 316, the moped involved here is a "bicycle" and not a "vehicle" and therefore it cannot be a "self-propelled vehicle" for purposes of section 627.736(4)(d). As Link was injured by physical contact with a motor vehicle "while not an occupant of a self-propelled vehicle," he was entitled to PIP benefits.
AFFIRMED.
ORFINGER C.J., and COWART, J., concur.
NOTES
[1] §§ 627.730-627.741, Fla. Stat. (Supp. 1980).
[2] Chapter 316 is known as the "Florida Uniform Traffic Control law." § 316.001, Fla. Stat. (1981).
[3] Section 316.003(23) provides as follows:

Motor-driven cycles.  Every motorcycle and every motor scooter with a motor which produces not to exceed five brake horsepower, including every bicycle propelled by a helper motor rated in excess of 1 1/2 brake horsepower.
[4] Section 627.736(4)(d)(1) originally provided that an insured was entitled to PIP benefits if he were "not an occupant of a motor vehicle or motorcycle... ."