BARFIELD, Chief Judge.
HMY New Yacht Sales, Inc. (HMY) challenges a final order of the Department of Revenue (DOR) adopting the hearing officer’s findings of fact, but rejecting her conclusions of law and finding that HMY is liable for the payment of use tax and interest on a yacht which it purchased for resale, but which was also used by HMY and by the manufacturer for demonstration and general sales promotional purposes. We affirm the finding that HMY is liable for the payment of use tax and interest on the yacht, notwithstanding procedural error on the part of DOR.
The parties do not dispute the facts. HMY (a Florida boat dealer) purchased the 47-foot fishing yacht, “The Bandit,” from Davis Yachts, Inc. (the manufacturer) in January 1990 for $520,000. HMY intended to resell the yacht, but also to use it for demonstration and sales promotional activities until its resale. The yacht was taken to boat shows and fishing tournaments, was used only under the direction of HMY or Davis Yachts, and was never loaned or rented to anyone. Davis Yachts bore some of the expense of the promotional activities, which inured to the benefit of both businesses. The yacht was at all times operated under HMY’s dealer registration and decal, as provided in section 327.13(4), Florida Statutes (1991).[1]
In October 1990, HMY placed the yacht on a multiple listing service in an effort to quickly sell it in face of a government announcement of a luxury tax proposal which HMY feared would adversely affect the boat market. In November 1990, on the advice of its accountant, HMY took the yacht out of its inventory account and placed it in its fixed assets account in order to take depreciation for federal tax purposes. The boat was sold in November 1991.
In 1992, DOR performed a routine sales tax audit of HMY, covering the period from March 1987 through February 1992. Based upon the change in the accounting status of the yacht from inventory to capital asset, the auditor determined that HMY had converted “The Bandit” to its own use and was therefore responsible for payment of the statutory use tax under section 212.05, Florida Statutes (1991). Based on the audit, DOR issued a notice of proposed assessment of use tax, penalty, and interest, and HMY filed a written protest. DOR thereafter issued a notice of decision sustaining its assessment, and HMY requested a formal hearing, which was held before a Department of Administrative Hearings (DOAH) hearing officer.
*1387 HMY’s prehearing statement argued that no use tax was due because the yacht “was purchased for resale and used as a demonstrator” and that “[a] dealer is not deemed to have used a vessel in Florida so as to be subject to the use tax when he has a vessel for sale and is using it as a demonstrator, with a Florida dealer registration decal as provided in Section 327.13, Florida Statutes.” DOR’s prehearing statement stated its position, “that Petitioner’s accounting treatment for the boat in question and use as a general demonstrator vessel converted the vessel to Petitioner’s use and rendered it taxable, pursuant to Chapter 212, Fla. Stat., despite the fact that this boat was sold in October, 1991.”
The hearing officer considered the live testimony of the DOR auditor and deposition testimony of the vice president of HMY. HMY’s attorney argued that HMY was not liable for the use tax “simply because of the treatment that was given the yacht on the corporate books.” DOR argued:
... the use to which this boat was put, accountingwise, was inconsistent with that to be afforded inventory. And at that point in time, it was converted to the use and benefit of this particular taxpayer, and benefits were derived .... [a]nd that is the basis [for the use tax assessment].
When HMY’s vice president was asked whether the yacht was purchased as a demonstrator, he responded:
A. Yes. Our intention, in 1990, was to have a boat for demonstration and promotional purposes to enhance our business and to use as a vehicle, or vessel in this case, to draw more business and create more sales. That was the purpose in getting that boat in 1990.
Q. Did it create more sales?
A. I absolutely think it did.
He testified that it was always HMY’s intent to resell the yacht, that the yacht was always for sale, that it was operated under HMY’s dealer registration and decal, and that HMY complied with section 327.13. On cross-examination, he agreed that the reason for purchasing the yacht was “for use as a demonstrator, as opposed for (sic) an investment ... the plan, from day one, was to use it as it was used, which was as a demonstrator ... [t]he plan was for it to be a demonstrator boat, and to use it for promotional activities that we were involved with then, and still are today, and to do the boat tests, and to do the factory some good when they needed sea trial and demonstrations done in our part of the country; it was a designated plan.” He admitted that Davis Yachts contributed to some of the demonstration and promotional expenses of the yacht, “because the end result was that it was a benefit, supposed to be a benefit, to both of us to have this thing as a demonstrator ... that was a lot of the reason for Davis’ participation, was that it was going to be good for us both, and as a demonstrator, we would be able to have this boat available for these kinds of things.” The auditor testified that she was not aware of section 327.13(4), and that the sole basis for the use tax assessment was the change in accounting of the yacht.
In its proposed recommended order, DOR suggested the hearing officer find that the use tax assessment was made against the yacht “because the Petitioner converted this boat to its own use by transferring it out of inventory and taking a federal income tax benefit that is inconsistent with the treatment to be afforded inventory, which cannot be depreciated.” It proposed that the hearing officer make the following conclusions of law: that under the applicable statutes, “the use to which the Petitioner converted this vessel was inconsistent with its keeping [it] as inventory”; that “the conclusion that [the vessel] was used in the trade or business, is warranted”; and that although HMY purchased the yacht without sales tax liability, “its inconsistent accounting treatment and actual use of the vessel supports the conclusion that ‘The Bandit’ had been converted to Petitioner’s use and merged with the mass of property in this State, therefore rendering it liable for use tax as assessed by Respondent
[[Image here]]
In her recommended order, the hearing officer concluded that HMY’s actual use of “The Bandit” was dispositive of its liability for use tax. She cited the fact that HMY had complied with section 327.13(4) and stated that the DOR auditor did not consider section 327.13 in determining that HMY was *1388 liable for use tax “because she was not aware of the existence of the statutory provision.” She noted that the change in treatment of the yacht on the corporate books “occurred at about the same time that Petitioner placed the vessel on the multiple listing service to provide other yacht dealers with information on the vessel in order to increase Petitioner’s opportunities to sell The Bandit.” She concluded:
The better reasoned argument is that the treatment of an item on the corporate books may be one indication of whether personal property is being held for resale, but it is not the only or conclusive indication. Where, as here, Petitioner purchased a new vessel for resale as an exempt purchaser and continuously put forth efforts to accomplish that resale, only using the vessel as authorized for a registered dealer, then Petitioner evidenced no intent to convert the boat and did not convert the boat to its own use based only on bookkeeping entries in the corporate records, following the advice of its tax professional. Under the Department’s argument, it is the bookkeeping entry which the Department has elevated to a taxable event rather than the actual use of the vessel, a proposition not supported by any statutory or rule citation.
The hearing officer noted DOR’s broad discretion, under section 213.21(3), in determining whether to assess penalties and interest for the late payment of sales or use tax if “the noncompliance is due to reasonable cause and not to willful negligence, willful neglect, or fraud.” She found that “no evidence was offered that there was any intent or attempt to wrongfully evade the Florida use tax.” She recommended “that a Final Order be entered determining that Petitioner is not liable for payment of use tax, penalty, or interest on The Bandit, and withdrawing the assessment which is the subject of this proceeding.”
In its final order, DOR adopted the hearing officer’s findings of fact and her legal conclusion that it had jurisdiction,- but rejected her other conclusions of law, “because they misapprehend the law or rely on or recite incomplete or inapplicable portions of the statutes or rules,” and substituted its own conclusions of law. Noting the definition of “use” in section 212.02(21), it concluded that the facts “establish that Petitioner exercised rights and powers incident to ownership of an interest in the property beyond those necessary for resale of the property.” It noted that HMY had admitted using the yacht for demonstration and promotion of sales of other boats, and to generally promote goodwill for its businesses. It stated:
Demonstration and promotional use of specific tangible personal property restricted to that necessary to achieve sale of that specific tangible personal property, would not result in assessment of use tax. There is, however, no exemption from tax for tangible personal property purchased and used for purposes of demonstrating and promoting other tangible personal property.
(Emphasis in the original; footnote omitted.) It also noted that “ ‘The Bandit’ was extensively used by petitioner and by Davis Yachts, Inc. (a separate legal entity), for demonstration and promotion of sales of other boats in Davis Yachts’s inventory, or to be manufactured by Davis Yachts, and Petitioner received direct compensation for that use.” It concluded that “[t]he use by Petitioner of ‘The Bandit’ for the promotion of its other boats and the use by and for another entity were the exercise by Petitioner of rights and powers incident to ownership beyond any required for resale of the property so used.”
DOR found that section 327.13 addresses safe operation and registration of vessels, not taxation, and that “it does not provide an exemption from taxes imposed pursuant to Chapter 212.” The agency concluded that it was not possible, under the narrow construction of tax exemption statutes required by Green v. Pederson, 99 So.2d 292 (Fla.1957),
... to imply that the legislature, by specifying uses of a vessel for purposes of regulation and registration under Chapter 327, intended to provide an exemption from a tax expressly imposed under sections 212.05 and 212.06, F.S. If the legislature had intended to grant such an exemption, it could have expressly done so. Compare, *1389 for example, section 212.0601, F.S., which provides an exemption from use tax (other than a specified annual amount for each dealer license plate) on use of a motor vehicle with a dealer license plate under section 320.08(1), F.S.
It also concluded that HMY’s converting the yacht “from an inventory item to a capital asset was not incident to resale of the property, but was a purposeful use in order to claim depreciation on federal income tax returns” and that “by signing a federal income tax return in which it claimed a deduction for depreciation with respect to the yacht, Petitioner declared that the yacht was not in its inventory of stock in trade held primarily for resale, and that the yacht was used in its trade or business.” It ruled that HMY was liable for payment of use tax and interest on the use of “The Bandit” because it “extensively used this property, exercising rights and powers incident to ownership other than as necessary to resale of this particular property.” However, it exercised its discretion under section 212.21(3) “to waive the penalty related to this portion of the assessment.”
We find that DOR properly adopted all the hearing officer’s factual findings, notwithstanding how they were labeled by the hearing officer, and that it also properly rejected her legal conclusions. The hearing officer apparently misread the law as stating that a dealer is exempt from the use tax even though it uses the vessel for taxable purposes, if it also intends to sell the vessel. DOR did not dispute that HMY always intended resale of the yacht, or that resale of “The Bandit” and any demonstration or promotional activities intended to aid in selling “The Bandit” are considered non-taxable uses. Its determination that HMY is liable for use tax was based in part on the fact that in addition to resale of “The Bandit,” HMY also used the yacht to sell other yachts and to promote its business and the manufacturer’s business, all of which DOR interprets as falling within the statutory definition of a taxable “use.” This interpretation of the statute is a reasonable one and is within the agency’s scope of activity.
The problem is that, notwithstanding that HMY does not deny that it used “The Bandit” to sell other boats and to promote its business and the business of Davis Yachts, the hearing officer did not make such a finding that “The Bandit” was used for more than to aid in its own resale, probably because she did not interpret the statute as making this determination central to the question of whether HMY was liable for use tax in this case. It was not within the agency’s province to make this factual finding. See Boulton v. Morgan, 643 So.2d 1103 (Fla. 4th DCA 1994); Friends of Children v. Department of Health and Rehabilitative Services, 504 So.2d 1345 (Fla. 1st DCA 1987); Cohn v. Department of Professional Regulation, 477 So.2d 1039 (Fla. 3d DCA 1985). Were the actual use of the yacht the only basis for the instant tax assessment, we would be compelled to remand this case to DOR for further proceedings, including remand by the agency to the hearing officer for entry of a recommended order containing all findings of fact necessary to the determination of whether HMY would be liable for use tax on “The Bandit.” However, because the tax assessment is also based upon HMYs accounting treatment of the yacht, we find affirmance of the final order is proper.
We approve DOR’s determination that HMY was liable for a use tax on “The Bandit” based on its conclusion that HMY’s converting the yacht “from an inventory item to a capital asset was not incident to resale of the property, but was a purposeful use in order to claim depreciation on federal income tax returns” and that “by signing a federal income tax return in which it claimed a deduction for depreciation with respect to the yacht, Petitioner declared that the yacht was not in its inventory of stock in trade held primarily for resale, and that the yacht was used in its trade or business.” We also approve the agency’s interpretation of the statutory definition of “use” with respect to demonstration and promotional activities, i.e., that such activities related solely to resale of the vessel do not constitute a taxable “use,” but that when such activities are also related *1390 to the sale of other vessels or to the general promotion of the dealer’s business or another business, they constitute a taxable “use” of the vessel.
Notwithstanding the agency’s improper factfinding with respect to the actual use of the yacht, the final order determining that HMY is liable for use tax on “The Bandit,” including interest, is AFFIRMED.
KAHN, J., and SMITH, Senior Judge, concur.

. Section 327.13 relates to the registration by dealers and manufacturers of boats used for demonstration, sales promotional, or testing purposes:
A manufacturer or dealer shall not use or authorize the use of any vessel registered pursuant to this section for other than demonstration, sales promotional, or testing purposes. Such vessel shall not be used for any commercial or other use not specifically authorized by this section.